

**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

SCOTT, DESTINI TRISNAGAY
112-26 ROOSEVELT AVE
301
CORONA, NY 11368

DHS/ICE Office of Chief Counsel – NYB
26 Federal Plaza, 11th Floor
New York, NY 10278

Name: SCOTT, DESTINI TRISNAGAY

A 226-091-229

Type of Proceeding: Removal

Date of this notice:
6/2/2026

Type of Appeal:

Filed By:

### REJECTION OF APPEAL

This notice is to inform you that the appeal received by the Board of Immigration Appeals (Board or BIA) in the above-referenced case on 5/29/2026 is being rejected for the following reason (s):

o    The submitted Fee Waiver Request Form (Form EOIR-26A) contains information that the respondent/applicant has sufficient Assets to pay the required fee. The respondent/applicant has not established an inability to pay the required filing fee. See 8 C.F.R. § 1003.8(a)(3). The respondent/applicant has 15 days from the date of this notice to re-file the rejected document with the filing fee or new fee waiver request and any applicable filing deadline will be tolled during the 15-day cure period.

PLEASE NOTE

If you correct and refile this appeal, YOU MUST ATTACH THIS REJECTION NOTICE to your submission.

We have returned your appeal and all attachments to you for timely correction of the defect(s). THIS DOES NOT EXTEND THE ORIGINAL TIME LIMIT within which you must file your appeal. Where a stay attached to the filing of an appeal, there is no automatic stay of removal beyond the filing deadline. For more information on automatic stays and discretionary stays of removal, see Chapter 5

May 28, 2026

Board of Immigration Appeals
Clerk's Office
5107 Leesburg Pike, Suite 2000
Falls Church, VA 22041

```
┌─────────────────────┐
│   FEE WAIVER        │
│ REQUESTED FOR       │
│ NON-DETAINED        │
│  RESPONDENT         │
└─────────────────────┘
```

**Re: Form EOIR-26, Notice of Appeal from a Decision of an Immigration Judge**
**Form EOIR-26A, Fee Waiver Request**

Scott, Destini Trisnagay
A226-091-229

To Whom It May Concern:

Destini Trisnagay Scott (Respondent), proceeding *pro se*, hereby submits the enclosed Form EOIR-26, Notice of Appeal from a Decision of an Immigration Judge, along with the Form EOIR-26A, Fee Waiver Request.

On April 29, 2026 Immigration Judge Sanon at the 290 Broadway New York City Immigration Court ordered Respondent removed. Respondent reserved appeal and is timely filing Form EOIR-26. This filing is being made within thirty (30) days of the Immigration Judge's decision.

With this appeal, Respondent hereby likewise submits a fee waiver request. Respondent requests that the Board grant the filing fee waiver, as Respondent is completely unable to pay the $1,010 fee.

In the event the fee waiver request is denied, the Immigration Court Practice Manual (ICPM) and the BIA Practice Manual provide a grace period to cure a filing after denial of a filing fee waiver request. *See* ICPM 3.4(d) (citing 8 C.F.R. § 1003.24(d)); BIA Practice Manual 3.4(c) (citing 8 C.F.R. § 1003.8(a)(3)). Both sources state that the "filer will be given 15-days to re-file the rejected appeal or motion with the fee or new fee waiver request, and any applicable filing deadline will be tolled during the 15-day cure period." Thus, **if the filing fee waiver is denied, Respondent, should be notified in writing of the denial in a notice that provides at least 15 days from the date of receipt of the notice for re-submission of the Notice of Appeal.**

In support of the filing, Respondent includes the following documents in conformance with BIA Practice Manual § 3.3(c).

| | |
|---|---|
| **Tab A** | Form EOIR-26A, Fee Waiver Request |
| **Tab B** | Form EOIR-26, Notice of Appeal from a Decision of an Immigration Judge |
| **Tab C** | Form EOIR-60, Notice of Entry of Limited Appearance for Document Assistance Before the Board of Immigration Appeals |
| **Tab D** | Evidence of Respondent's hardships and benefits |
| **Tab E** | Copy of Immigration Judge's Decision |

1

**(1) Respondent merits a fee waiver of the $1010 fee.**

On July 3, 2025, Congress passed H.R. 1, which became Pub. L. 119-21, 139 Stat. 72 ("H.R. 1") on July 4, 2025. The law provides, in relevant part, that the fee for filing of Appeal of a Decision of an Immigration Judge increases from $110.00 to $1,010 for fiscal year 2025 or "such amount as the Attorney General may establish, by rule." This is an 818% increase from the $110.00 fee, which has been in effect since 1986. *See* 51 Fed. Reg. 39,994 (Nov. 4, 1986).

Respondent respectfully requests that the Board approve the fee waiver request. Public Law No. 119-21 does not affect the validity of the Executive Office for Immigration Review's (EOIR) fee waiver request form, Form EOIR-26A. EOIR Policy Memorandum 25-36 at 2. Further, the guidance contained in EOIR Policy Memorandum 21-10 regarding practices for the adjudication of fee waiver requests remains valid. *Id.* EOIR Policy Memorandum 21-10 states, in part, that, "Each fee waiver request is assessed on its own merits, and EOIR has no policy directing the automatic grant or denial of a fee waiver request. IJs and AIJs retain independent judgment and discretion in assessing fee waiver requests." EOIR Policy Memorandum 21-10 at 2. Thus, the BIA may still grant a fee waiver request for an appeal or motion filed with the BIA if a respondent can show that they are unable to pay the filing fee. *See* BIA Practice Manual §3.4(c)-(d). Here, the Board should grant Respondent's fee waiver request because Respondent has no income, has resided in homeless shelters since 2024, and receives limited means-tested benefits that barely cover basic necessities, yet alone one-time expenses of $1,010.

Pursuant to the regulations, if a fee waiver request does not establish the inability to pay the required fee, the respondent will receive a rejection notice and the appeal or motion will be returned. However, the respondent will receive 15-days to re-file the rejected appeal or motion with the fee or new fee waiver request, and any applicable filing deadline will be tolled during the 15-day cure period. *See* 8 C.F.R. § 1003.8(a)(3). As such, if the Board does not grant Respondent's fee waiver request, the BIA must toll the filing deadline for 15 days to allow Respondent to cure the Notice of Appeal filing. *See* 8 C.F.R. § 1003.8(a)(3).

Yours sincerely,

Noah Elias Habeeb
E60 Limited Appearance Fully Accredited Representative

**U.S. Department of Justice**
Executive Office for Immigration Review

OMB# 1125-0003

## Fee Waiver Request

## NAME AND ALIEN ("A") NUMBER

Answer all items in English.    (Type or Print)

*If more than one respondent is included in your application, motion, or appeal, only the lead respondent need file this form.*

Scott, Destini, Trisnagay

Name (Last, First, Middle)

226091229

Alien ("A") Number

### AFFIDAVIT IN SUPPORT OF FEE WAIVER REQUEST.

(This affidavit is to be signed by the respondent, not the respondent's attorney or representative of record.)

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that I am the person above and that I am unable to pay the filing fee. I believe that my application/motion/appeal is valid and not frivolous, and I declare that the following information is true and correct to the best of my knowledge.

Destini Trisnagay Scott

*(Print name of respondent filing the form)*

D. Scott

*(Signature of respondent filing the form)*

05/28/2026

*(Date signed)*

The Immigration Judge may grant your fee waiver request for an EOIR application or motion filed with the Immigration Court if you show that you are unable to pay the filing fee. The Board of Immigration Appeals (BIA) may grant your fee waiver request for an appeal or motion filed with the BIA if you show that you are unable to pay the filing fee. If this fee waiver request does not establish your inability to pay the required fee, your application, motion, application, or appeal will not be deemed properly filed. 8 C.F.R. §§ 1003.8 and 1003.24(d). You must answer all questions on the form even if the answer is "$0.00".

1. **Estimate your average monthly amount of money received from each of the following sources. Adjust any amount that was received weekly, biweekly, quarterly, semiannually, or annually to show the average monthly rate. Use gross amounts, that is, amounts before any deductions for taxes and other state/federal payroll withholdings.**

| Income Sources | Monthly Average |
|---|---|
| Employment, including self-employment | $ 0.00 |
| Income from real property (such as rental income) | $ 0.00 |
| Interest from checking and/or saving account(s) | $ 0.00 |
| All other income, including but not limited to these and other sources: alimony, child support, interest, dividends, social security, annuities, unemployment, public assistance, etc. | $ 45.00 |
| **1.A.: TOTAL AVERAGE MONTHLY INCOME** | $ 45.00 |

Form EOIR-26A
Rev. Aug. 2022

**2. Estimate your average monthly expenses. Adjust any payments that are made weekly, biweekly, quarterly, semiannually, or annually to show the monthly rate.**

| Expense Sources | Monthly Average |
|---|---|
| Rent or home-mortgage payment(s) (include lot rented for mobile home) | $ 0.00 |
| Utilities (electricity, heating fuel, water, sewer, telephone, internet, etc.) | $ 0.00 |
| Installment payments or outstanding debits (credit card(s), store credit card(s), vehicle payment, personal loan(s), etc., but not including rent or home-mortgage payments) | $ 0.00 |
| Living expenses (food, clothing, transportation, child care, tuition, etc.) | $ 500.00 |
| All other expenses, including but not limited to these and other sources: alimony, child support, insurance, medical, health, any state or federal taxes, attorney fees, etc. | $ 0.00 |
| **2.B: TOTAL AVERAGE MONTHLY EXPENSES** | $ 500.00 |

**3. Calculate ability to pay filing fee (total income minus total expenses):**

| | |
|---|---|
| **TOTAL AVERAGE MONTHLY INCOME (1.A):** | $ 45.00 |
| **TOTAL AVERAGE MONTHLY EXPENSES (2.B):** | - $ 500.00 |
| **TOTAL:** | $ -455.00 |

4. Provide any other information that will help explain why you cannot pay the filing fees for your appeal, motion, or application. Include your name and "A" number on all pages of any additional document(s) or additional pages.

Respondent has resided in a homeless shelter since 2024. Respondent was unable to work before receiving employment authorization and a Social Security Number in November 2025. Respondent found a job as a home health worker and worked from February 2026 until April 2026 when Respondent lost the job. Now, Respondent continues to reside in a homeless shelter and does not have employment. Respondent receives only $45.00 in Cash Assistance each month from the NYC Human Resources Administration. Respondent has approximately $500 in monthly expenses for food, transportation, and other bare necessities. Please see attached evidence of hardship and inability to pay.

**Attorney or Representative** (if any):
(If an attorney or representative is submitting this form, the attorney or representative must complete, sign, and date below.)

I hereby attest that I have reviewed the details provided herein and I am satisfied that this fee waiver request is made in good faith.

| | | | |
|---|---|---|---|
| *m/h* | Noah Elias Habeeb | FF200146 | 05/28/2026 |
| Signature of Attorney or Representative | Print Name | EOIR ID Number | Date |

**Paperwork Reduction Act Notice:** Under the Paperwork Reduction Act, a person is not required to respond to a collection of information unless it displays a valid OMB control number. We try to create forms and instructions that are accurate, can be easily understood, and which impose the least possible burden on you to provide us with information. The estimated average time to complete this form is one (1) hour. If you have comments regarding the accuracy of this estimate, or suggestions for making this form simpler, you can write to the Executive Office for Immigration Review, Office of the General Counsel, 5107 Leesburg Pike, Suite 2600, Falls Church, Virginia 22041.

**Privacy Act Notice:** The information on this form is requested to determine if you have established eligibility for the fee waiver you are seeking. The legal right to ask for this information is located at 8 C.F.R. § 1003.8(a)(3). EOIR may provide this information to other Government agencies. Failure to provide this information may result in denial of your request.

Form EOIR-26A
Rev. Aug. 2022

**U.S. Department of Justice**
Executive Office for Immigration Review
*Board of Immigration Appeals*

OMB #1125-0002
**Notice of Appeal from a Decision of an Immigration Judge**

1. List Names and Alien Numbers (A-Numbers) of all Respondents/Applicants.

   SCOTT, DESTINI TRISNAGAY

   A226-091-229

**WARNING:** Names and A-Numbers for everyone appealing the Immigration Judge's decision must be written in item #1. The names and A-Numbers listed will be the only ones considered to be the subjects of the appeal.

2. I am  [✓] the Respondent/Applicant  [ ] DHS-ICE  *(Mark only one box.)*

3. I am  [ ] DETAINED  [✓] NOT DETAINED  *(Mark only one box).*

4. My last hearing was at:  290 BROADWAY - 15TH FLR  NEW YORK, NY 10007  *(Location, City, State)*

5. **What decision are you appealing?**

   *Mark only one box below. If you want to appeal more than one decision, you must use more than one Notice of Appeal (Form EOIR-26).*

   [✓] I am filing an appeal from the Immigration Judge's decision *in **merits** proceedings* (example: removal, deportation, exclusion, asylum, etc.) dated 4/29/26

   [ ] I am filing an appeal from the Immigration Judge's decision *in **bond** proceedings* dated _____  (For DHS use only: Did DHS invoke the automatic stay provision before the Immigration Court? [ ] Yes  [ ] No)

   [ ] I am filing an appeal from the Immigration Judge's decision ***denying a motion to reopen or a motion to reconsider*** dated _____

   [ ] I am filing an ***interlocutory appeal*** from the Immigration Judge's decision dated _____

   *(Please attach a copy of the Immigration Judge's decision that you are appealing.)*

Form EOIR-26
Rev. Mar. 2026
Exp. 12/31/2028

**U.S. Department of Justice**
Executive Office for Immigration Review
*Board of Immigration Appeals*

OMB #1125-0002
**Notice of Appeal from a Decision of an**
**Immigration Judge**

6. State in detail the reasons for this appeal. Please refer to the General Instructions at item F for further guidance. You are not limited to the space provided below; use more sheets of paper if necessary. Write your name(s) and A-Number(s) on every additional sheet.

The immigration judge (IJ) erred as a matter of fact and law, as well as through improper exercise of discretion and procedural violations of the rights of a pro se respondent.

First, the IJ failed to apply a presumption of well-founded fear given the record of past persecution on account of Respondent's sexuality and gender identity including being shot at, having her close friend murdered, and experiencing sexual assault because of her sexuality. As such, there was no basis to rebut the presumption of well-founded fear of future persecution and the IJ's inquiry into Respondent's subjective fear of persecution and internal relocation was improper and the IJ erred as a matter of law.

Further, in assessing Respondent's subjective fear of persecution, the IJ improperly misunderstood Respondent's religious conviction as a lack of fear and misconstrued the well-founded fear test. Respondent testified that she does not ultimately fear corporeal harm because she has faith and trust in God's plan and believes in her ultimate spiritual salvation. Respondent, however, firmly believes she will be harmed, mistreated, and even killed in Jamaica because of her sexuality and gender identity should she be forced to return. Respondent attested to this fear and her strong belief that she continues to face harm in Jamaica in her application for asylum and sworn statement. Rather than an internal inconsistency or inaccuracy, Respondent's testimony was indicative of a religious worldview shared by millions of people who have faith in God's plan and belief in spiritual salvation beyond this world, while still fearing specific corporeal harm, in this case, on account of sexual and gender identity. For these reasons, the IJ was mistaken in finding Respondent lacked subjective fear of persecution in Jamaica and credibility due to the IJ's own clear error in understanding Respondent's religious conviction and fear of persecution, as well as her misapplication of the well-founded fear test.

The IJ also failed to apply the correct standard for withholding of removal and protection under the Convention Against Torture (CAT) given the clear past persecution suffered by Respondent, which should have resulted in the burden shifting to DHS to show Respondent's life no longer remains in danger in Jamaica.

Additionally, the IJ failed to properly exercise her duty to develop the record for a pro se respondent, resulting in procedural and due process violations. For example, the IJ failed to illicit testimony about the sexual violence that Respondent faced on account of her sexuality.

Further, the IJ improperly exercised discretion by punitively refusing to grant voluntary departure after initially offering relief because of a culturally mistaken belief that the Respondent was comporting herself in an aggressive manner. Finally, this and some other errors could have been prevented had the Court provided Jamaican Patois interpretation. Due to the lack of interpretation for a pro se respondent, the IJ misunderstood many elements of the pro se Respondent's testimony contributing to aforementioned and additional factual errors.

*(Attach additional sheets if necessary)*

**WARNING:** You must clearly explain the specific facts and law on which you base your appeal of the Immigration Judge's decision. The Board may summarily dismiss your appeal if it cannot tell from this Notice of Appeal, or any statements attached to this Notice of Appeal, why you are appealing.

Page 2 of 7

Form EOIR-26
Rev. Mar. 2026
Exp. 12/31/2028

**U.S. Department of Justice**
Executive Office for Immigration Review
*Board of Immigration Appeals*

OMB #1125-0002
**Notice of Appeal from a Decision of an**
**Immigration Judge**

7. Do you desire oral argument before the Board of Immigration Appeals? ☐ Yes ☑ No

**WARNING:** If you mark "Yes" in item #7, you should also include in your statement in item #6 why you believe your case warrants review by a three-member panel. The Board ordinarily will not grant a request for oral argument unless you also file a brief.

8. Do you intend to file a separate written brief or statement after filing this Notice of Appeal? ☑ Yes ☐ No

**WARNING:** If you mark "Yes" in Item #8, you will be expected to file a written brief or statement after you receive a briefing schedule from the Board. The Board may summarily dismiss your appeal if you do not file a brief or statement within the time set in the briefing schedule.

9. Signature of Person Appealing (or attorney or representative):

Print Name: Noah Elias Habeeb

Sign Here:

Date: 5/28/26

Form EOIR-26
Rev. Mar. 2026
Exp. 12/31/2028

**U.S. Department of Justice**
Executive Office for Immigration Review
*Board of Immigration Appeals*

OMB #1125-0002
**Notice of Appeal from a Decision of an Immigration Judge**

10. Mailing Address of Respondents/Applicants:

Name: Destini Trisnagay Scott

Street Address: 112-26 Roosevelt Avenue

Apartment or Room Number: 301

City, State, Zip Code: Corona, NY 11368

Telephone Number: (646) 288-7701

**NOTE:** You must notify the Board within five (5) business days if you move to a new address or change your telephone number. You must use the Change of Address Form/Board of Immigration Appeals (Form EOIR-33/BIA).

Form EOIR-26
Rev. Mar. 2026
Exp. 12/31/2028

**U.S. Department of Justice**
Executive Office for Immigration Review
*Board of Immigration Appeals*

OMB #1125-0002
**Notice of Appeal from a Decision of an
Immigration Judge**

11. Mailing Address of Attorney or Representative for the Respondents/Applicants:

Name: Noah Elias Habeeb

Street Address: 130 W 30th Street

Suite or Room Number: Ground

City, State, Zip Code: New York, NY 10001

Telephone Number: (212) 929-9498

Email: sanctuary@cbst.org

**NOTE:** If an attorney or representative signs this appeal for you, he or she must file *with this appeal*, a Notice of Entry of Appearance as Attorney or Representative Before the Board of Immigration Appeals (Form EOIR-27).

Form  EOIR-26
Rev. Mar. 2026
Exp. 12/31/2028

**U.S. Department of Justice**
Executive Office for Immigration Review
*Board of Immigration Appeals*

OMB #1125-0002
**Notice of Appeal from a Decision of an**
**Immigration Judge**

12. **PROOF OF SERVICE**
    **You must complete this section.**

I

> Noah Elias Habeeb

mailed or delivered a copy of this Notice of Appeal on | 5/29/26

to

> ICE OPLA

at

> 26 Federal Plaza, Room 1130, New York, NY 10278

☐ No service needed. I electronically filed this document, and the opposing party is participating in ECAS.

SIGN HERE:

**NOTE:** If you are the Respondent or Applicant, the "Opposing Party" is the Assistant Chief Counsel of DHS – ICE.

**WARNING:** If you do not complete this section properly, your appeal will be rejected or dismissed. If you do not attach a fee payment receipt or a completed Fee Waiver Request (Form EOIR-26A) to this appeal, your appeal may be rejected or dismissed.

Form  EOIR-26
Rev. Mar. 2026
Exp. 12/31/2028

**U.S. Department of Justice**
Executive Office for Immigration Review
*Board of Immigration Appeals*

OMB #1125-0002
**Notice of Appeal from a Decision of an Immigration Judge**

## HAVE YOU?

☐ Read all of the General Instructions.

☐ Provided all of the requested information.

☐ Completed this form in English.

☐ Provided a certified English translation for all non-English attachments.

☐ Signed the form.

☐ Served a copy of this form and all attachments on the opposing party, if applicable.

☐ Completed and signed the Proof of Service.

☐ Attached the required fee payment receipt or Fee Waiver Request.

☐ Attached a completed and signed EOIR-27 for each respondent or applicant represented by an attorney or representative.

Form EOIR-26
Rev. Mar. 2026
Exp. 12/31/2028

**U.S. Department of Justice**
Executive Office for Immigration Review
*Board of Immigration Appeals*

OMB# 1125-0021

**Notice of Entry of Limited Appearance for Document Assistance Before the Board of Immigration Appeals**

| (Type or Print) **NAME AND ADDRESS OF ASSISTED PARTY** | | **ALIEN REGISTRATION NUMBER ("A-Number")** (Provide A-Number of the assisted party in this case.) |
|---|---|---|

DESTINI (First)    T (Middle Initial)    SCOTT (Last)

112-26 ROOSEVELT AVE (Number and Street)    301 (Apt. No.)

CORONA (City)    NY (State)    11368 (Zip Code)

226 091 229

**Entry of limited appearance for** (please check all that apply and provide a brief description of the assisted document(s) in the space provided below. Additional information may be provided on the reverse side of this form):

[✓] Appeal    [ ] Brief    [ ] Motion    [ ] Other Document

Description: E26 ; E26A

**Attorney or Representative** (please check one of the following):

[ ] I am an attorney eligible to practice law in, and a member in good standing of, the bar of the highest court(s) of the following state(s), possession(s), territory(ies), commonwealth(s), or the District of Columbia (use additional space on reverse side if necessary) and I am not subject to any order disbarring, suspending, enjoining, restraining or otherwise restricting me in the practice of law in any jurisdiction (if subject to such an order, do not check this box and explain on reverse).

    **Full Name of Court** _____ **Bar Number (if applicable)** _____

[✓] I am a representative accredited to appear before the Executive Office for Immigration Review as defined in 8 C.F.R. § 1292.1(a)(4) with the following recognized organization: CONGREGATION BEIT SIMCHAT TORAH

[ ] I am a law student or law graduate of an accredited U.S. law school as defined in 8 C.F.R. § 1292.1(a)(2) (EOIR-60 must be filed by supervising attorney or accredited representative along with that supervisor's EOIR-60).

[ ] I am a reputable individual as defined in 8 C.F.R. § 1292.1(a)(3).

[ ] I am an accredited foreign government official, as defined in 8 C.F.R. § 1291.1(a)(5), from _____ (country).

[ ] I am a person who was authorized to practice on December 23, 1952, under 8 C.F.R. § 1292.1(b).

**Attorney or Representative:**

I hereby enter my limited appearance at the request of the party named above. I have explained the limited nature of my assistance to the party named above, including an instruction that I am not agreeing to serve as the party's attorney or representative in proceedings before EOIR. I have read and understand the statements provided on the reverse side of this form that set forth in the regulations the conditions governing limited appearances and representations before EOIR. By signing this form, I consent to publication of my name and any findings of misconduct by EOIR, should I become subject to any public discipline by EOIR pursuant to the rules and procedures at 8 C.F.R. 1003.101 *et seq.* I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| SIGNATURE OF ATTORNEY OR REPRESENTATIVE | EOIR ID NUMBER | DATE |
|---|---|---|
| X _(signature)_ | FF200146 | 5/28/26 |

**NAME OF ATTORNEY OR REPRESENTATIVE & CONTACT INFORMATION**

Name: NOAH (First)    E (Middle Initial)    HABEEB (Last)

Address: 130 W 30th St. (Street)    NEW YORK (City)    NY (State)    10001 (Zip Code)

Law Firm or Organization: CONGREGATION BEIT SIMCHAT TORAH

Telephone: (212) 929-9498 Facsimile: _____ Email: Sanctuary@cbst.org

Form EOIR-60
Rev. May 2025
Exp. 9/30/2028

### Proof of Service

I (Name) NOAH ELIAS HABEEB emailed, mailed or delivered a copy of this Form EOIR-60 on (Date) 5/29/26

to the DHS (Immigration and Customs Enforcement – ICE) at 26 Fed. Plaza, Room 1130, NY, NY 10278

☐ No service needed. I electronically filed this document, and the opposing party is participating in ECAS.

X _____
Signature

### Additional Information

**LIMITED APPEARANCES** - A limited appearance for each assisted party listed on an appeal, brief, motion, or other document shall be filed on a separate Form EOIR-60. Limited appearances for document assistance are only permitted in cases that originated in the immigration court. A Form or Forms EOIR-60 shall be filed together with the assisted filing at the time the documents are filed with the Board of Immigration Appeals (BIA). All Forms EOIR-60, together with the assisted filing, shall be filed with the BIA (for further information, please see the EOIR Policy Manual, which is available on the EOIR website at www.justice.gov/eoir). The attorney or representative must check the box indicating whether the limited appearance is for a particular appeal, brief, motion, or other document. Each subsequent filing or submission must be accompanied by a new limited appearance form. When a limited appearance is executed, the attorney or representative's signature constitutes a representation that, under the provisions of 8 C.F.R. part 1003, they are an authorized and qualified practitioner, have notified the client about the scope of the limited appearance, and will comply with the EOIR Rules of Professional Conduct in 8 C.F.R. § 1003.102.

**FREEDOM OF INFORMATION ACT** - This form may not be used to request records under the Freedom of Information Act or the Privacy Act. The manner of requesting such records is in 28 C.F.R. §§ 16.1-16.11 and appendices. For further information about requesting records from EOIR under the Freedom of Information Act, see How to File a Freedom of Information Act (FOIA) Request with the Executive Office for Immigration Review, available on EOIR's website at www.justice.gov/eoir.

**PRIVACY ACT NOTICE** - The information requested on this form is authorized by 8 U.S.C. §§ 1229(a), 1362 and 8 C.F.R. § 1003.38 in order to enter an appearance before EOIR. The information you provide is mandatory and required to enter an appearance. Failure to provide the requested information will result in an inability to enter an appearance. EOIR may share this information with others in accordance with approved routine uses described in EOIR's system of records notice, EOIR-001, Records and Management Information System, 69 Fed. Reg. 26179 (May 11, 2004), or its successors and EOIR-003, Attorney Discipline System, 85 Fed. Reg. 32423 (May 29, 2020). Furthermore, the submission of this form acknowledges that an attorney or representative will be subject to the disciplinary rules and procedures at 8 C.F.R. 1003.101 *et seq.*, including, pursuant to 8 C.F.R. §§ 292.3(h)(3), 1003.108(c), publication of the name of the attorney or representative and findings of misconduct should the attorney or representative be subject to any public discipline by EOIR. CASES BEFORE EOIR - Automated information about cases before EOIR is available by calling (800) 898-7180 or (240) 314-1500 or online through the Automated Case Information System at https://acis.eoir.justice.gov/en/.

**FURTHER INFORMATION** - For further information, please see the EOIR Policy Manual, which is available on the EOIR website at www.justice.gov/eoir.

Under the Paperwork Reduction Act, a person is not required to respond to a collection of information unless it displays a valid OMB control number. We try to create forms and instructions that are accurate, can be easily understood, and which impose the lease possible burden on you to provide us with information. The estimated average time to complete this form is six (6) minutes. If you have comments regarding the accuracy of this estimate, or suggestions or making this form simpler, you can write to the Executive Office for Immigration Review, Office of the General Counsel, 5107 Leesburg Pike, Suite 2600, Falls Church, Virginia 22041.



**NYC Human Resources Administration | Family Independence Administration**
Department of Social Services

Date: 04/23/2026

Case Number: 00030933093E

Case Name: SCOTT DESTINI

General Phone Number: (718) 557-1399

## BUDGET LETTER REQUEST

| Contact Information: | | | | |
|---|---|---|---|---|
| Head of Household: | Destini T Scott | | | |
| Home Address: | 11226 ROOSEVELT AVE Apt 301 | CORONA QUEENS | NY | 11368 |
| Mailing Address: | 11226 ROOSEVELT AVE | CORONA QUEENS | NY | 11368 |
| Phone Number: | | Email Address: destiniscott98@icloud.com | | |

### Legend

| | | |
|---|---|---|
| AP= Applying | SI = Single Issue | CA= Cash Assistance |
| AC= Active | CL/RJ= Not Active | MA= Medicaid |
| SN= Sanctioned | NA= Not Applying | SNAP= Supplemental Nutrition Assistance Program Benefits |

### Household Members:

| First Name | Last Name | Date of Birth | Relationship | CA Status | MA Status | SNAP Status |
|---|---|---|---|---|---|---|
| DESTINI T | SCOTT | 06/10/1998 | Casehead | AC | | RJ |
| Destini T | Scott | 06/10/1998 | Casehead | AC | | RJ |

RESTRICTED Case: 26-1675, 06/18/2026, DktEntry: 2.1, Page 15 of 50

# SEMI-MONTHLY CASH ASSISTANCE BUDGET CALCULATION

Effective Date of Budget: 26/B/02   Local Office: 053   Worker:   Case Name: SCOTT DESTINI

Case Number: 00030933093E   Suffix: 1   Number in CA H/H: 01   Number in Suffix:

RESTRICTED Case: 26-1675, 06/18/2026, DktEntry: 2.1, Page 16 of 50

## NEEDS

**EARNED INCOME**

| RESTR | 185% TEST & POVERTY LEVEL TEST AMOUNT |
|---|---|
| PRE ADDED ALLOWANCE | $22.50 |
| 1. SHELTER | $.00 |
| ENERGY | $.00 |
| ENERGY SUPPLEMENT | $.00 |
| WATER | $.00 |
| FUEL | $.00 |
| PREGNANCY ALLOWANCE HOME DELIVERED MEALS | $.00 |
| RESTAURANT ALLOWANCE | $.00 |
| OTHER NEEDS | $.00 |
| A. TOTAL NEEDS FOR 185% TEST | $22.50 |
| 185% X TOTAL NEEDS | $41.63 |
| TOTAL EARNED + UNEARNED FOR 185% TEST | $.00 |
| POVERTY LEVEL TEST | |
| | $652.09 |
| TOTAL INCOME FOR POVERTY LEVEL TEST | $.00 |
| NEEDS REDUCTION DUE TO IVD SANCTION | $.00 |
| B. TOTAL NEEDS FOR NET INCOME TEST | $22.50 |
| NEEDS REDUCTION DUE TO PRORATA SANCTION | $.00 |
| C. TOTAL NEEDS FOR BUDGET DEFICIT CALCULATION | $22.50 |

D. GROSS   $.00

| | ACTUAL | ALLOWED |
|---|---|---|
| STANDARD DEDUCTION | $.00 | $.00 |
| 64 % DEDUCTION | | |
| CHILD CARE | $.00 | $.00 |
| $ 15 EXEMPTION | $.00 | $.00 |
| 1/3 EXEMPTION | $.00 | $.00 |
| OTHER DEDUCTION (INCLUDES PRORATA REDUCTION AMT) | $.00 | $.00 |
| E. TOTAL DEDUCTIONS | $.00 | |
| F. NET EARNED INCOME | $.00 | |

**UNEARNED INCOME**

| SOURCE | AMOUNT |
|---|---|
| | $.00 |
| | $.00 |
| | $.00 |
| G. TOTAL UNEARNED INCOME | $.00 |
| UNEARNED INCOME DEDUCTION (INCLUDES PRORATA REDUCTION AMT) | $.00 |
| H. NET UNEARNED INCOME | $.00 |
| I. TOTAL INCOME (F + H) | $.00 |

**CASH ASSISTANCE GRANT CALCULATION**

| | |
|---|---|
| C. TOTAL NEEDS | $22.50 |
| I. TOTAL INCOME | $.00 |
| J. BUDGET DEFICIT | |
| RECOUPMENT AMOUNT | $.00 |
| SEMI-MONTHLY CASH ASSISTANCE GRANT | $22.50 |

## OTHER ALLOWANCES

| | |
|---|---|
| REFRIGERATOR RENTAL ALLOWANCE | $.00 |

NOTE: AMOUNTS SHOWN IN ITEMS (A) AND (J) ABOVE HAVE BEEN ROUNDED DOWN.

BUDGET NUMBER

# SNAP BUDGET CALCULATION FOR CA & CA-SSI CASES

Case Number: 00030933093E     Local Office: 053     Number in Case: 00     Worker:

Case Name: SCOTT DESTINI     Effective Date of Budget: 26/B/02

## BUDGET CALCULATION

**A.** INCOME

| | | |
|---|---|---|
| 1. SEMI-MONTHLY GROSS EARNED INCOME | | $.00 |
| 2. NET S / M INCOME FROM BOARDER/LODGER | | $.00 |
| 3. TOTAL S/M INCOME (LINE 1 + 2) | | $.00 |
| 4. S / M CASH ASSISTANCE GRANT | | -$22.50 |
| 5. TOTAL S/M PA RECOUPMENT | | $.00 |
| 6. NET S/M CASH ASSISTANCE GRANT (LINE 4 MINUS 5) | | $45.00 |
| 7. GROSS S/M OTHER UNEARNED INCOME | | $.00 |
| 8. TOTAL S/M UNEARNED INCOME (LINES 6 + 7) | | $.00 |
| 9. S / M GROUP HOME EXCLUSION | | $.00 |
| 10. S / M CHILD SUPPORT EXCLUSION | | $.00 |
| 11. LINES 3 + 8 , LESS LINES 9 + 10 | A. | $.00 |

**B.** $.00    STANDARD SEMI-MONTHLY     B.

**C.** DEDUCTIONS

| | | |
|---|---|---|
| 12 20% OF LINE 3 | | |
| 13 STANDARD DEDUCTION | | $.00 |
| 14 ALLOWABLE SEMI-MONTHLY CHILD-CARE / DEPENDENT CARE COSTS | | $.00 |
| 15 ALLOWABLE S / M MEDICAL DEDUCTIONS | | $.00 |
| 16 CHILD SUPPORT DEDUCTIONS | | $.00 |
| 17 HOMELESS SHELTER DEDUCTION | | $.00 |
| 18 LINES 12 + 13 + 14 + 15 + 16 + 17 | C. | $.00 |

**D.** ADJUSTED INCOME

| | | |
|---|---|---|
| 19 A MINUS C | D. | $.00 |

**E.** SHELTER COSTS

| | | |
|---|---|---|
| 20. S / M ACTUAL RENT OR MORTGAGE BILLED TO HOUSEHOLD | | $.00 |
| 21. S / M COMBINED UTILITY/PHONE STANDARD | | $.00 |
| 22. S / M COMBINED HEAT/UTILITY/PHONE STANDARD | | $.00 |
| 23. S / M  PHONE STANDARD | | $.00 |
| 24. OTHER S / M SHELTER EXPENSE, REAL ESTATE TAXES, INSURANCE, INSTALLATION OF UTILITIES, ETC | | $.00 |
| 25. LINES 20 + 21 + 22 + 23 + 24 | E. | $.00 |

**F.** EXCESS SHELTER DEDUCTIONS

| | | |
|---|---|---|
| 26. TOTAL SHELTER COST, E | | $.00 |
| 27. 1/2 OF ADJUSTED INCOME, D | | $.00 |
| 28. EXCESS SHELTER COSTS. (LINES 26 MINUS 27) IF 26 IS LESS THAN 27,  ZERO WILL APPEAR | | |
| 29. MAXIMUM SHELTER DEDUCTION FOR AGED / DISABLED, AMOUNT FROM LINE 28. FOR ALL OTHERS, ACTUAL OR STANDARD, 229.50, WHICHEVER IS LESS. | F. | $.00 |

**G.** SEMI-MONTHLY SNAP NET INCOME

| | | |
|---|---|---|
| 30. D, ADJUSTED INCOME | | $.00 |
| 31. F, EXCESS SHELTER DEDUCTION | | $.00 |
| 32. S / M NET SNAP INCOME. (LINE 30 MINUS 31) | G. | $.00 |

**H.** MONTHLY SNAP NET INCOME

| | | |
|---|---|---|
| 33. MULTIPLY AMOUNT IN 32 X 2 | H. | $.00 |

**I.** BENEFIT ENTITLEMENT

| | | |
|---|---|---|
| 34. BENEFIT | | $.00 |
| 35. MONTHLY SNAP RECOUPMENT | | $.00 |
| 36. ADJUSTED BENEFIT AMOUNT. (LINE 34 MINUS 35) | I. | $.00 |

BUDGET NUMBER:             FEDERAL SNAP:          STATE SNAP:

RESTRICTED Case: 26-1675, 06/18/2026, DktEntry: 2.1, Page 17 of 50



Community Services

## RESIDENCY LETTER

January 16, 2026

CASE NAME:    Destini Scott
CARES ID:      7908853

To Whom It May Concern:

This letter is to verify that Destini Scott is a client of VIP Services Groups with VIP Queens Women's Hotel/ FLUSHING MEADOWS located at 112-26 Roosevelt Avenue Corona, NY 11368.

Date of Birth:     06/10/1998

Date of Arrival:    03/20/2025

Mailing Address:  VIP Queens Women's Hotel / FLUSHING MEADOWS

                    112-26 Roosevelt Avenue, Corona, New York 11368.

The client resides in a furnished hotel unit that is a non-cooking facility, and the provider of shelter services serves breakfast, lunch, and dinner; the client is not responsible for the preparation of meals. The clients receive case management services following their overall and specific needs. This is a shelter-based hotel, and the TAD should be coded correctly before running the WMS budget. Please use one of the shelter codes to ensure the client's shelter rent can be disbursed SQ45.

If there are any questions or concerns, please feel free to contact the client's Case Manager Supervisor at 929-505-3360 or via email psa@vipservices.org. Thank you in advance for your time and attention to this matter.

Respectfully,

Patricia Sa
Case Manager Supervisor
Housing & Shelter
**C: 929-505-3360**
**E: psa@vipservices.org**

 **Department of Homeless Services**



## The City of New York Department of Homeless Services

### Appointment Slip

Date: 03/19/2025          Triage Date: 12/09/2024          Head of Case: DESTINI SCOTT

Case Number: 23611436          Case Composition: 1/0

**Subject:** HOUSING
**Date & Time of Appointment:** 03/20/2025 11:00 AM
**Location:** RM 1005
**Appointment Type:** Other
**Comments/Checklist/Outstanding Documents:**
meet with housing to create housing plan

**Invitees:**

Jaliyah Mascoll

**Additional Information, if required:**

**Appointment Slip:**    1st Issued ☐    2nd Issued ☐

**Additional Reasons for Appointment:** ☐ Proof of Eviction   ☐ Birth Certificate   ☐ Proof of Family Unit

☐ Other

If you are unable to keep this appointment, please call:

DOC|100019

1 of3
CARES Case Number: 23611436
Generated: 03/19/2025 03:34 PM



## Department of Homeless Services

**Service Rendered:** ☐ In Person ☐ Under Facility Door

**Please write any additional comments below:**

_____     _____
Applicant's Signature            Date & Time Served

_____     _____
Supervisor's Signature           Date & Time Served

_____     _____
Investigator's Signature         Date

**Appointment Status:**

☐ Applicant did not respond to Appointment Slip     ☐ Applicant responded to Appointment Slip

_____     _____
Supervisor's Signature           Date

If you are unable to keep this appointment, please call:

2 of 3
CARES Case Number: 23611436
Generated: 03/19/2025 03:34 PM

 **Department of
Homeless Services**

"This form or document was translated to the client(s) using a Language Translation Service."

Translator Name _____

Translator ID _____

Date & Time of Translation _____

DHS Staff Member _____

Language Translated _____

If you are unable to keep this appointment, please call:

3 of 3
CARES Case Number: 23611436
Generated: 03/19/2025 03:34 PM

Revised 5/2018

Department of Homeless Services
Division of Adult Services

## CLIENT NOTICE OF SHELTER BED ASSIGNMENT/SERVICES
### For Assessment Shelter Use Only

| Client Name/Nombre (Last, First) | CARES ID # | Date of Birth | Today's Date/Fecha |
|---|---|---|---|
| Scott Destini | 79088853 | 10/6/98 | 3/16/25 |

◯ I understand that I have been offered a bed at/*Yo entiendo que me han ofrecido una cama en:* ___Sleep Inn RA (BLOW)_____ Shelter.

X D. Scott
_____
Client Signature/*Firma del Cliente*

◯ I accept the above bed assignment/services. I understand that I must accept transportation at the time provided/*Yo accepto la cama asignada/servicios y entiendo que debo acceptar transportacion a la hora ofrecida.*

X DScott
_____
Client Signature/*Firma del Cliente*

◯ I do **NOT** accept the above bed assignment/services. I understand that by refusing to accept the bed assignment, I may be asked to leave this facility/*Yo no accepto la cama asignada/servicios. Yo entiendo que al no acceptar la cama asignada, pueden pedirme que deje el refugio.*

_____
Client Signature/*Firma del Cliente*

Client refused to sign; however, form was explained to client. ◯ English ◯ Spanish

(Two staff signatures required)

| Staff Name/Title (Please Print) | Staff Signature |
|---|---|
| Tieangela Gilyard | Tieangela Gilyard |
| Supervisor Name/Title (Please Print) | Supervisor Signature |
| | |

COMMENTS:

Stamp Dates and Times Below:　　**N/A**

| TRIAGE | SCREENING | TRANSPORT | REFUSAL | SCIMS/ANCHOR UPDATE |
|---|---|---|---|---|
| | | | | |

 **nystateofhealth**
The Official Health Plan Marketplace

Contact us for questions or to find in-person help:

 **1-855-355-5777 (TTY: 1-800-662-1220)**

**nystateofhealth.ny.gov**

---

10309  2 AV 0.593   ## 000010309-034
Destini T Scott
112-26 Roosevelt AVe # 301A
Corona, NY 11368-2624

Account Number: **AC0014102901**

Date of Notice: **December 10, 2025**

# IMPORTANT NOTICE ABOUT YOUR ELIGIBILITY THROUGH NY STATE OF HEALTH

▶ **Take the important step to managing your account online.**

Your NY State of Health online account holds important information about you and your household members. By setting up your online account, you can update your application on your own at any time. You can keep track of your information, including your notices, whenever you want.

**To set up your online account**, go to www.nystateofhealth.ny.gov, click on **APPLY TODAY**. Then, click **SIGN IN** if you already have a NY.gov ID, or **REGISTER ACCOUNT** if you are a new user. After you log in, enter this **invitation code — 173746773625414153704 —** to confirm your personal information and finish setting up your account.

 Destini T Scott

Marketplace ID: HX0015968292 / CIN: RE15610M

**Starting January 01, 2026, you qualify for Essential Plan 4. You will pay $0 (free) per month for your health plan.**

The Essential Plan covers all essential health benefits and does not have an annual deductible. You will have no co-pays for certain services. You also get additional benefits.

Helpful Information:

▶ **We enrolled you into an Essential Plan to keep you with the health insurance company you had before.** Your health coverage starts on January 01, 2026. Contact your health insurance company if you have questions about covered services or providers.

---

You can get help reading this notice in English or another language or get this notice in another format.

Call us at 1-855-355-5777 (TTY: 1-800-662-1220)

AC0014102901                                                    December 10, 2025

▶ **Use your insurance ID card from your health insurance company to get services from a provider in your network.** You will continue to get services through your current health plan. Call your health insurance company to find a provider in your network or for questions about your coverage or benefits. You can also search for a provider at https://pndslookup.health.ny.gov.

▶ **Use your New York State Benefit Identification Card to get family planning or non-emergency transportation services.** To find a provider near you, call the Helpline at 1-800-541-2831.

# ▌How We Made Our Decision

NY State of Health looked at your household size, income and other information listed in your application, and information from state and federal data sources on December 09, 2025 to decide your eligibility.

If you think we made a mistake, contact us right away at **1-855-355-5777 (TTY: 1-800-662-1220).**

   Destini T Scott                            Marketplace ID: HX0015968292 / CIN: RE15610M

We based this decision on a household income of $0.00 per year and your household size. Your household income is between $0.00 and $15,650.00. This is the income range for Essential Plan 4 for your household size.

You do not qualify for other programs because:

▶ You are either in the first five years of your qualified immigration status, are living in the United States under the color of law (PRUCOL) OR are a temporary non-immigrant who meets the New York State residency requirements. Because you fit into one of these categories, you do not qualify for Medicaid.

▶ Individuals who have coverage through the Essential Plan do not qualify for the premium tax credit.

# ▌Legal Reference

Listed below are the specific laws and government regulations which give NY State of Health the authority and which set the rules under which we can offer affordable health insurance to New York State residents.

We made our decisions based on these rules:

• Code of Federal Regulations: 42 CFR § 600.305(a); 45 CFR § 155.305; 45 CFR § 155.305(e); 45 CFR § 155.305(f); and 45 CFR § 155.305(g)

• New York Social Services Law: § 366(1)(g); and § 369-ii

2

AC0014102901

December 10, 2025

# You Must Report Changes

Over the next year, you must tell NY State of Health about any changes that would affect your eligibility for enrollment in health insurance within 30 days of such a change. You need to tell us if:

- Your income changes (only if you are receiving financial assistance);
- You get access to or enroll in the New York State Health Insurance Program (NYSHIP);
- Your eligibility for health insurance from a job changes;
- The cost of your health insurance premium from a job changes;
- You become qualified for other health insurance;
- You move;
- There is a change in immigration status;
- Your household changes. For example, you marry/divorce, become pregnant, or have a child; adopt a child, or a child is placed for adoption with you;
- There is a change in full-time student status (if applicable to application members);
- You change how you plan to file your taxes. For example, you will claim new dependents (only if you are receiving financial assistance).

**HOW TO REPORT CHANGES TO NY STATE OF HEALTH**

Contact us if you have any questions about this Notice. Let us know if you need help applying for or accessing your health insurance coverage.

Call us at:
**1-855-355-5777
(TTY: 1-800-662-1220)**

Mail:
**NY State of Health
PO Box 11729
Albany, NY 12211**

If you do not report changes within 30 days and they affect your ability to get government help with insurance costs, you may have to pay back some or all of the subsidies you received.

Log into your account at **www.nystateofhealth.ny.gov** or contact us to tell us about any changes.

# If You Think We Made a Mistake

If you think we made a mistake about your eligibility, you can call us to discuss your concerns. Call NY State of Health at 1-855-355-5777 (TTY: 1-800-662-1220).

You can appeal a decision:

- That you do not meet the rules to buy a health plan for yourself or your family through NY State of Health. Example: You do not live in New York State, or are incarcerated;
- That you do not meet the rules for getting help paying for a health plan you want to purchase;
- On how much you must pay for your monthly premium if you applied for financial help;
- That you do not meet the rules for coverage under Medicaid, Essential Plan or Child Health Plus;
- On how much money you must pay for Child Health Plus coverage if your children are eligible for this program;

T101-EL000130856656

3

AC0014102901

December 10, 2025

- On how much money you must pay for Essential Plan coverage if you or a household member are eligible for this program;

- That you do not meet the rules for signing up for insurance through NY State of Health during "open enrollment" or a "special enrollment period;"

- Delayed by NY State of Health. Example: You did not get a notice telling you if you meet the rules for Medicaid coverage within the required 45 days.

NY State of Health has a coordinated appeals process, which means that its Appeals Unit will hear all the issues listed above. You can find the general process for NY State of Health appeals and the details for premium tax credit, cost-sharing reductions, qualified health plans, and enrollment periods at 45 Code of Federal Regulations (CFR) part 155, subpart F. Additionally, you can find the Medicaid fair hearing rules at 42 CFR part 431, subpart E and the Child Health Plus rules at 42 CFR § 457.348(b). For Essential Plan appeals, NY State of Health follows the process and rules at 45 CFR part 155, subpart F; however, appellants cannot appeal their Essential Plan eligibility to the Federal Department of Health and Human Services.

# How to Request an Appeal and Additional Information

An appeal is your request to NY State of Health to review and change a decision we have made about your eligibility.

### How and When to Ask for an Appeal

You have 60 calendar days from the date on this notice to ask for an appeal. You will receive a letter from NY State of Health saying that we received your request. We will send you a letter telling you the date and time of your appeal hearing.

T101-EL000130856856

4

AC0014102901 December 10, 2025

## Asking for Your Coverage to Continue

If you have coverage, you can ask to keep it while you go through the appeals process. You must ask for this when you ask for an appeal. This means that your current insurance program will continue until a decision is made about your appeal. If you have Medicaid coverage, we will continue your coverage if you request it within 10 days from the date of this notice OR before the eligibility effective date listed in this notice, whichever is later.

## The Appeal Hearing

The hearing is your chance to explain why you disagree with the NY State of Health's decision. A hearing officer will make a decision about your appeal. The hearing officer will not take sides and will not favor you or NY State of Health. The officer will conduct the hearing by phone. Here is what you need to do before, during, and after the hearing.

### Before the hearing

Look at the documents NY State of Health used to make a decision about your eligibility. You can send us information that might help us understand your appeal.

You can request specific policy materials necessary to help you decide whether to ask for an appeal or to help you prepare for your appeal hearing. We may try to resolve your issues through an informal dispute resolution process.

### During the hearing

You can have someone with you during your telephone hearing if you want to. That person can be a friend, relative, lawyer, or other individual. Or you can participate in your hearing on your own.

### After the hearing

The outcome of an appeal could change the eligibility of other people on your account even if they do not ask for an appeal.

If the appeal is not resolved in your favor, you may be responsible for the cost of the health coverage that you used while your appeal was being processed. Here are some examples of what you may have to do when the appeal is not resolved in your favor:

- If you received coverage through Medicaid while your appeal is being determined, you may have to pay back the cost of Medicaid benefits you received.

- If you were enrolled in the Essential Plan or Child Health Plus while your appeal was being determined, you may have to pay back your premium, if you have a premium.

- If your appeal found that you are not qualified for tax credits, the IRS will reconcile your tax credits when you file your federal tax return, which may result in a tax penalty.

## HOW TO REQUEST AN APPEAL OR REQUEST MORE INFORMATION

Contact us if you have any questions about this Notice. Let us know if you need help applying for or accessing your health insurance coverage.

Call us at:

**1-855-355-5777 (TTY: 1-800-662-1220)**

Fax your response to:

**1-855-900-5557**

Mail request to:

**NY State of Health
PO Box 11729
Albany, NY 12211**

T101-EL000130856656

5

AC0014102901

December 10, 2025

This Page Intentionally Left Blank

T101-EL000130856656


**nystateofhealth**
The Official Health Plan Marketplace .

10310  1 AV 0.593    ## 000010310-034
Destini T Scott
112-26 Roosevelt AVe # 301A
Corona, NY 11368-2624

December 10, 2025
Account ID: AC0014102901

# IMPORTANT NOTICE
# ABOUT YOUR PLAN ENROLLMENT

Dear Destini T Scott,

This notice concerns your health insurance through NY State of Health as of December 09, 2025.

**If any of the enrollment information listed below is not correct, please call us right away.**

---

**ENROLLED IN AN ESSENTIAL PLAN:**

Plan Name: Essential Plan 4
Insurance Company: Fidelis Care
Plan Type: Medical with Dental and Vision

**Member(s)**

**Coverage Information**

Destini T Scott
**Marketplace ID:** HX0015968292
**CIN:** RE15610M

Your Premium: No monthly premium
Enrollment Start Date: November 01, 2025

---

For questions about what services and health care providers are covered, please call your insurance company at:

| **Insurance Company / Plan Name** | **Phone:** |
| --- | --- |
| Fidelis Care / Essential Plan 4 | 1-888-343-3547 TTY: 711 |

**Call NY State of Health at 1-855-355-5777 (TTY: 1-800-662-1220) to get help in other languages or for help reading this notice. This notice is also available in other formats. Call for more information. To find a navigator or certified application assistor near you, visit https://www.nystateofhealth.ny.gov or call us.**

T012-15783315O-P01

## Information About Ending or Changing Your Coverage through NY State of Health

### Ending Your Coverage

You can end your coverage through NY State of Health at any time. You can end coverage through NY State of Health for yourself, for everybody in your household or just for some household members. Call NY State of Health at 1-855-355-5777 to learn more about ending your coverage.

### Important Things to Consider When Ending Your Coverage:

o Ending Your Qualified Health Plan: If you end coverage for you or another person, you may not re-enroll until the next annual Open Enrollment period. This rule does not apply if you qualify for a Special Enrollment period (SEP). Life events that open an SEP include getting married or having a baby. For more information about SEPs, visit http://info.nystateofhealth.ny.gov/SpecialEnrollmentPeriods.

**IMPORTANT:** When you end coverage with one plan and start a new one in the same year, all of your cost-sharing responsibilities start over. For example, any payments that went toward the annual deductible for your old plan will not apply to the new plan. This is true even if the new plan is with the same company.

o Ending Your Medicaid, Child Health Plus, Essential Plan, or Qualified Health Plan: You will no longer be able to access services after your coverage ends.

**Please Note:** Changing your coverage is different than ending your coverage. If you want to switch plans and do not want to make any other changes to your account, call NY State of Health to find out if you are eligible to switch plans and to pick a different plan. Enrollment in Child Health Plus and the Essential Plan can be changed at any time during the year.

If anything has changed in your life that might affect how you are covered and what you pay for health insurance, you must go to http://www.nystateofhealth.ny.gov. Log into your account to update your application with any changes about you or your household members. The types of changes that may affect your eligibility can be found in section, "Reporting changes during the year," of this notice.

### Reporting Changes during the year

Over the next year, you are obligated to report to NY State of Health any changes that would affect your eligibility for enrollment in health insurance within 30 days of such a change. You need to tell us if:

- You move;

- Your income changes (only if you are receiving financial assistance);

- Your eligibility for health insurance from a job changes;

- Your household changes, for example, you marry/divorce, become pregnant, or have a child(ren); adopt a child(ren) or if a child(ren) is placed for adoption with you;

- You become qualified for other insurance;

- Change in full-time student status (if applicable to application members);

2 of 6

- Change in immigration status;

- Change how you plan to file your taxes, for example, if you will claim new dependents (only if you are receiving financial assistance).

To report changes you may go to your My Account at www.nystateofhealth.ny.gov or contact us. If you do not report changes, and the changes affect your eligibility for advance premium tax credits, you may have to pay back some or all of the subsidies you received.

## Additional Plan Enrollment Information for Essential Plan

### What Benefits are included?

You will receive a benefit package from your health plan. The benefit package will cover a wide range of services, including doctor's visits, inpatient hospital care, lab tests, prescription and non-prescription drugs and much more.

For any questions about what services your benefit plan covers, please call your health plan directly.

### Additional Services Provided:

In addition to receiving services covered by the Essential Plan, the following individuals can get other health care services through a provider by using their New York State Benefit Card.

- Destini T Scott

These other services include family planning and non-emergency transportation to medical appointments. You must be approved in advance before you can get transportation services to medical appointments.

Call the Helpline at 1-800-541-2831 to find a provider near you or learn how to obtain prior approval for transportation services.

Important information about your New York State Benefit Identification Card is listed below.

Your Essential Plan offers certain family planning services. You can access these services with your Essential Plan insurance ID Card or you can go outside of your provider network by using your New York State Benefit ID Card to access these services.

### Important Information about your New York State Benefit Identification Card:

The following individuals will receive a New York State Benefit Identification Card in the mail if they have not received one in the past. If they have received a card in the past, that card should be used.

- Destini T Scott

You should bring your New York State Benefit Identification Card with you each time you use services. Please keep your card in a safe place and let us know immediately if your card does not work, is lost or

T012-15783150-P01

stolen. Keep this card even if you stop receiving benefits. The same card may be used again if you become eligible in the future.

If you need services before you receive your New York State Benefit Identification Card, you must make sure the provider accepts your insurance. Bills for services can only be paid if the provider accepts your insurance.

To request a New York State Benefit Identification Card, contact the Marketplace at 1-855-355-5777.

**Next steps for enrollment in an Essential Plan:**

- If you or someone in your family is eligible to enroll in an Essential Plan and has not selected or has not been enrolled in an Essential Plan offered by your current health insurance company, you need to choose a plan in order for your coverage to start. If you do not choose a plan, one will be chosen for you.

- Your Essential Plan will send your insurance ID card and other information about your benefits and available providers in your network to you.

- You should contact your new health plan to select your Primary Care Provider (PCP). If you are choosing a new doctor, call the doctor's office first to make sure that the medical practice is accepting new patients and is participating in the health plan you have selected.

**Enrollment in your Essential Plan**

- You have the right to change plans. For more information about when you can change plans, or to change plans, please call us right away.

- You have the right to terminate your health insurance and enroll into another health plan if you cancel your policy within 10 days of enrolling.

- Your eligibility for Essential Plan must be renewed every year. We will contact you if we need information to complete the renewal.

**Information about Long-Term Care Services:**

Individuals who qualify for Essential Plan and need long term care services should contact NY State of Health at 1-855-355-5777. Individuals needing long-term care services may qualify for Medicaid if they meet all other eligibility criteria.

**How to Pick a Plan**

Sign into your NY State of Health account to:

- Find out if you have to pick a plan

- Compare health plans

- See what you qualify for

- See available plans

T012-15783150-P01

- If you don't have internet access and want to pick a plan over the phone, call NY State of Health at 1-855-355-5777.

Remember: You must pick a plan by the 15th of the month for coverage to begin on the first of the next/following month. Most people must enroll during Open Enrollment (late fall each year).

## How to Contact NY State of Health

Contact us if you have any questions about this Notice. Let us know if you need help applying for or accessing your health insurance coverage.

- **Call:** 1-855-355-5777 (TTY: 1-800-662-1220)

- **Mail:** NY State of Health
  PO Box 11727
  Albany, New York 12211

Sincerely,

**NY State of Health, The Official Health Plan Marketplace**

**Legal Reference:**

Listed below are the specific laws and government regulations which give NY State of Health the authority and which set the rules under which we can offer affordable health insurance to New York State residents.

- Eligibility standards for enrollment through NY State of Health may be found at 45 CFR §155.305.

This decision is based on Section 369-ii of the Social Services Law.

## Go Paperless

Make managing your account easier by going paperless. By going paperless, all of your important notices will be in one secure place and you can read your notices online at any time. We will send you an email alert when a new notice is available to read on your NY State of Health account. You must log into your account to view your notices. We will not include any private or confidential information in the email.

If you want to go paperless, log into your account and click on "Edit Account Information." Under "Communication Preferences", choose "Paperless" to get email alerts when new notices are posted to your NY State of Health account. You have the option to change this selection at any time.

It is important your address is correct in your account. Make sure that NY State of Health has your current mailing and residential address. Coverage for you or your family may be impacted if we do not have your current address.

## Health Insurance Portability and Accountability Act (HIPAA)

New York State is committed to protecting your privacy. To learn more about NY State of Health's privacy practices go to www.nystateofhealth.ny.gov or call customer service at **1-855-355-5777 (TTY: 1-800-662-1220).**

T012-157833150-P01

**Notice of Nondiscrimination Policy**

NY State of Health complies with applicable Federal civil rights laws and state laws and does not discriminate on the basis of race, color, national origin, creed/religion, sex, age, marital/family status, disability, pregnancy-related conditions, arrest record, criminal conviction(s), gender identity, sexual orientation, predisposing genetic characteristics, military status, domestic violence victim status and/or retaliation.

If you believe that NY State of Health has discriminated against you, you may file a complaint by going to: www.health.ny.gov/regulations/discrimination_complaints/ or by emailing the Diversity Management Office at DMO@health.ny.gov.

You may also file a civil rights complaint with the U.S. Department of Health and Human Services, Office for Civil Rights electronically at https://ocrportal.hhs.gov/ocr/smartscreen/main.jsf or by mail or phone at U.S. Department of Health and Human Services, 200 Independence Avenue, SW, Room 509F, HHH Building, Washington, D.C. 20201; 1-800-368-1019 (TTY: 1-800-537-7697). Complaint forms are available at www.hhs.gov/ocr/office/file/index.html.

**Accommodations**

NY State of Health provides free aids and services to people with disabilities to communicate effectively with us, such as:

- TTY through New York Relay Service
- If you are blind or seriously visually impaired and need notices or other written materials in an alternative format (large print, audio or data CD, or Braille), contact 1-855-355-5777 (TTY: 1-800-662-1220).

NY State of Health also provides free language assistance services to people whose primary language is not English, such as:

- Qualified interpreters
- Written information in other languages

If you need these services or for more information on Reasonable Accommodations, please call 1-855-355-5777 (TTY: 1-800-662-1220).

6 of 6



Department of
Social Services
Human Resources Administration | Family Independence
Department of Homeless Services | Administration

FIA-1268 (E) 09/29/2023 (page 1 of 2) LLF

053        Queens Job Center

32-20 Northern Blvd, 4 Fl

Long Island City                          11101

Date: 04/05/2026

Case Number: 00030933093E

Case Name: SCOTT DESTINI

Destini            T            Scott

DESTINI SCOTT

11226 ROOSEVELT AVE

Apt 301

CORONA QUEENS                    11368-0000

# CASH ASSISTANCE REPORTING REQUIREMENTS

Good news, you no longer have to return a six-month mailer!

But you do still need to report changes that may affect your case or benefits.

For Cash Assistance (CA), you must report changes within **10** days of the change. This is very important for CA since failure to report changes may affect your ongoing eligibility for CA and any other benefits you may be getting.

You must tell us if there are any change to:

> your needs (for example, the amount you pay for rent goes up or down)
>
> income (for example if you start a new job or if your Social Security benefit changes)
>
> resources/bank accounts
>
> living arrangements
>
> residence/address
>
> household size
>
> employment
>
> new information about your child's absent parent (if applicable)
>
> health insurance that becomes available to you or your child
>
> immigration/citizenship status
>
> pregnancy



**(Turn page)**

00386464 018511 002 002 00

FIA-1268 (E) 09/29/2023 (page 2 of 2)
LLF

Human Resources Administration
Family Independence Administration

## CASH ASSISTANCE REPORTING REQUIREMENTS *(continued)*

If you are not sure if you should report a change, REPORT.

### Need to Report a Change?

There are a number of ways you can tell us about the change on your case:



| | |
|---|---|
| **ACCESS HRA:** ▶ | Visit www.nyc.gov/accesshra on a computer or download the ACCESS HRA app on a mobile device.<br><br>Using ACCESS HRA is the fastest and easiest way to report your case changes.<br><br>On the website: Click on the "Request a CA Case Change or Emergency Grant" button under Quick Links on your homepage.<br><br>On the mobile app: 1) Click on "View Cases" in the Cases section, 2) find your Cash Assistance (CA) case, 3) Click the three dots (...) at the top right-hand corner of your case, and 4) click the "Request Case Change or Grant" button. |

You can also report changes by sending us a letter telling us what changed along with any proof of the change:

| | | |
|---|---|---|
|  | **By Fax:** ▶ | **(917) 639-2493** |
|  | **By Mail:** ▶ | **Queens Job Center**<br>**32-20 Northern Blvd, 4 Fl**<br>**CORONA QUEENS NY 11368-0000** |

Changes can also be reported:

| | | |
|---|---|---|
| 🏢 | **In Person:** ▶ | Call 311 or visit https://www1.nyc.gov/site/hra/locations/locations.page to find the closest BAC Center. Tell the BAC staff that you need to report a change. |

*You do not need to return this form.*

**Do you have a medical or mental health condition or disability?** Does this condition make it hard for you to understand this notice or to do what this notice is asking? Does this condition make it hard for you to get other services at HRA? **We can help you.** Use the *Help For People With Disabilities* form in this mailing. You can also call us at 718-557-1399. You can also ask for help when you visit an HRA office. You have a right to ask for this kind of help under the law.



**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**NEW YORK - BROADWAY IMMIGRATION**
**COURT**

Respondent Name:

    SCOTT, DESTINI TRISNAGAY

To:

    SCOTT, DESTINI TRISNAGAY
    112-26 ROOSEVELT AVE
    CORONA, NY 11368

A-Number:
226-091-229
Riders:
In Removal Proceedings
Initiated by the Department of Homeland Security
Date:
04/23/2026

## ORDER OF THE IMMIGRATION JUDGE

☑ This is a summary of the oral decision entered on 04/23/2026. The oral decision in this case is the official opinion, and the immigration court issued this summary for the convenience of the parties.

☐ Both parties waived the issuance of a formal oral decision in this proceeding.

### I. Removability

The immigration court found Respondent ☑ removable ☐ inadmissible under the following Section(s) of the Immigration and Nationality Act (INA or Act): 212(a)(6)(A)(i).

The immigration court found Respondent ☐ not removable ☐ not inadmissible under the following Section(s) of the Act:

### II. Applications for Relief

Respondent's application for:

A. Asylum/Withholding/Convention Against Torture

    ☑ Asylum was ☐ granted ☑ denied ☐ withdrawn with prejudice ☐ withdrawn without prejudice

    ☑ Withholding of Removal under INA § 241(b)(3) was ☐ granted ☑ denied ☐ withdrawn with prejudice ☐ withdrawn without prejudice

    ☑ Withholding of Removal under the Convention Against Torture was ☐ granted ☑ denied ☐ withdrawn with prejudice ☐ withdrawn without prejudice

    ☐ Deferral of Removal under the Convention Against Torture was ☐ granted ☐ denied ☐ withdrawn with prejudice ☐ withdrawn without prejudice

    ☐ Respondent knowingly filed a frivolous application for asylum after notice of the consequences. *See* INA § 208(d)(6); 8 C.F.R. §1208.20

B. Cancellation of Removal

☐ Cancellation of Removal for Lawful Permanent Residents under INA § 240A(a) was ☐ granted ☐ denied ☐ withdrawn with prejudice ☐ withdrawn without prejudice

☐ Cancellation of Removal for Nonpermanent Residents under INA § 240A(b)(1) was ☐ granted ☐ denied ☐ withdrawn with prejudice ☐ withdrawn without prejudice

☐ Special Rule Cancellation of Removal under INA § 240A(b)(2) was ☐ granted ☐ denied ☐ withdrawn with prejudice ☐ withdrawn without prejudice

C. Waiver

☐ A waiver under INA § was ☐ granted ☐ denied ☐ withdrawn with prejudice ☐ withdrawn without prejudice

D. Adjustment of Status

☐ Adjustment of Status under INA § was ☐ granted ☐ denied ☐ withdrawn with prejudice ☐ withdrawn without prejudice

E. Other

### III. Voluntary Departure

☐ Respondent's application for ☐ pre-conclusion voluntary departure under INA § 240B(a) ☐ post-conclusion voluntary departure under INA § 240B(b) was ☐ denied.

☐ Respondent's application for ☐ pre-conclusion voluntary departure under INA § 240B(a) ☐ post-conclusion voluntary departure under INA § 240B(b) was ☐ granted, and Respondent is ordered to depart by          . The respondent must post a $ bond with DHS within five business days of this order. Failure to post the bond as required or to depart by the required date will result in an alternate order of removal to taking effect immediately.

☐ The respondent is subject to the following conditions to ensure his or her timely departure from the United States:

☐ Further information regarding voluntary departure has been added to the record.

☐ Respondent was advised of the limitation on discretionary relief, the consequences for failure to depart as ordered, the bond posting requirements, and the consequences of filing a post-order motion to reopen or reconsider:

If Respondent fails to voluntarily depart within the time specified or any extensions granted by the DHS, Respondent shall be subject to a civil monetary penalty as provided by relevant statute, regulation, and policy. *See* INA § 240B(d)(1). The immigration court has set
☐ the presumptive civil monetary penalty amount of $3,000.00 USD
☐ $ USD instead of the presumptive amount.
If Respondent fails to voluntarily depart within the time specified, the alternate order of removal shall automatically take effect, and Respondent shall be ineligible, for a period of

10 years, for voluntary departure or for relief under sections 240A, 245, 248, and 249 of the Act, to include cancellation of removal, adjustment of status, registry, or change of nonimmigrant status. *Id.* If Respondent files a motion to reopen or reconsider prior to the expiration of the voluntary departure period set forth above, the grant of voluntary departure is automatically terminated; the period allowed for voluntary departure is not stayed, tolled, or extended. If the grant of voluntary departure is automatically terminated upon the filing of such a motion, the penalties for failure to depart under section 240B(d) of the Act shall not apply.

If Respondent appeals this decision, Respondent must provide to the Board of Immigration Appeals (Board), within 30 days of filing an appeal, sufficient proof of having posted the voluntary departure bond. The Board will not reinstate the voluntary departure period in its final order if Respondent does not submit timely proof to the Board that the voluntary departure bond has been posted.

In the case of conversion to a removal order where the alternate order of removal immediately takes effect, where Respondent willfully fails or refuses (1) to depart from the United States pursuant to the immigration court's order, (2) to make timely application in good faith for travel or other documents necessary to depart the United States, (3) to present themselves at the time and place required for removal by the DHS, or (4) conspires to or takes any action designed to prevent or hamper their departure pursuant to the order of removal, Respondent shall be subject to a civil monetary penalty for each day Respondent is in violation, pursuant to INA § 274D and 8 C.F.R. § 280.53(b)(14). If Respondent is removable pursuant to INA § 237(a), then Respondent shall be further fined and/or imprisoned for up to 10 years. See INA § 243(a)(1). Further, any Respondent that has been denied admission to, removed from, or has departed the United States while an order of exclusion, deportation, or removal is outstanding and thereafter enters, attempts to enter, or is at any time found in the United States shall be fined or imprisoned not more than two years, or both. 8 U.S.C. § 1326(a).

## IV.    Removal

☑    Respondent was ordered removed to JAMAICA.

☐    In the alternative, Respondent was ordered removed to

☐    Respondent was advised of the penalties for failure to depart pursuant to the removal order:

> If Respondent is subject to a final order of removal and willfully fails or refuses (1) to depart from the United States pursuant to the immigration court's order, (2) to make timely application in good faith for travel or other documents necessary to depart the United States, (3) to present themselves at the time and place required for removal by the DHS, or (4) conspires to or takes any action designed to prevent or hamper their departure pursuant to the order of removal, Respondent shall be subject to a civil monetary penalty for each day Respondent is in violation, pursuant to INA § 274D and 8 C.F.R. § 280.53(b)(14). If Respondent is removable pursuant to INA § 237(a), then Respondent shall be further fined and/or imprisoned for up to 10 years. See INA § 243(a)(1). Further, any Respondent that has been denied admission to, removed from, or has departed the United States while an order of exclusion, deportation, or removal is outstanding and thereafter enters, attempts to enter, or is at any time found in the United States shall be fined or imprisoned not more than two years, or both. 8 U.S.C. § 1326(a).

## V.    Other

☐ Proceedings were ☐ dismissed ☐ terminated with prejudice ☐ terminated without prejudice ☐ administratively closed.

☐ Respondent's status was rescinded under INA § 246.

☐ Other:

C Sanon

Immigration Judge: TERANZA SANON, CHEVONE 04/23/2026

Appeal: Department of Homeland Security: ☑ waived ☐ reserved

Respondent: ☐ waived ☑ reserved

Appeal Due: 05/26/2026

### Certificate of Service

This document was served:

Via: [ M ] Mail | [ P ] Personal Service | [ E ] Electronic Service | [ U ] Address Unavailable

To: [ P ] Alien | [ ] Alien c/o custodial officer | [ ] Alien atty/rep. | [ E ] DHS

Respondent Name : SCOTT, DESTINI TRISNAGAY | A-Number : 226-091-229

Riders:

Date: 04/23/2026 By: Singh, Kavita, Court Staff

In the Matter of SCOTT, DESTINI TRISNAGAY A#226-091-229      Date of Decision: 4/23/2026

## Standard Language Addendum: Asylum

The following statements of law are hereby incorporated into the Immigration Judge's oral decision. These statements are not the sole legal basis for the decision and are meant to be read in conjunction with any law cited in the oral decision itself.

### I.    Credibility & Corroboration

An applicant requesting asylum bears the evidentiary burden of proof and persuasion in connection with any application under INA § 208. Under the REAL ID Act, after considering "the totality of the evidence, and all relevant factors," the Court may base a credibility determination on: the demeanor, candor, or responsiveness of the applicant or witness; the inherent plausibility of the account; the consistency between oral and written statements; the internal consistency of such statements; the consistency of such statements with other evidence of record; and any inaccuracy or falsehood in such statements, "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." INA § 208(b)(1)(B)(iii); see also Diallo v. U.S. Dep't of Justice, 548 F.3d 232, 234 n.1 (2d Cir. 2008); Xiu Xia Lin v. Mukasey, 534 F.3d 162, 164 (2d Cir. 2008) (noting that judges "may rely on omissions and inconsistencies that do not directly relate to the applicant's claim of persecution"). But see Gao v. Sessions, 891 F.3d 67, 78 (2d Cir. 2018) ("[I]n general 'omissions are less probative of credibility than inconsistencies created by direct contradictions in evidence and testimony."); see also Gurung v. Barr, 929 F.3d 56, 61 (2d Cir. 2019) (stating that trivial differences in the wording of statements describing the same event are not sufficient to create inconsistencies, especially where an applicant is relying on an interpreter to convey their story).

Testimony that is credible, persuasive, and "refers to specific facts sufficient to demonstrate that the applicant is a refugee" may be sufficient to meet this burden of proof absent corroboration. INA § 208(b)(1)(B)(ii); see also 8 C.F.R. § 1208.13(a). In determining whether the applicant has met their burden of proof, the Court "may weigh the credible testimony along with other evidence of record." INA § 208(b)(1)(B)(ii); see Garland v. Ming Dai, 141 S. Ct. 1669, 1680 (2021) (holding that even if the applicant's evidence is treated as credible, "the agency need not find his evidence persuasive or sufficient to meet the burden of proof"). Where the Court determines that the applicant should "provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence." INA § 208(b)(1)(B)(ii). An Immigration Judge should provide an applicant who has not submitted reasonably available corroborating evidence both an opportunity to explain the absence of such evidence and a continuance if they show good cause. Matter of L-A-C-, 26 I&N Dec. 516, 527 (BIA 2015). However, the Immigration Judge is not required to give the applicant advance notice of the specific evidence the applicant must submit to meet their burden of proof and to grant a continuance automatically for the applicant to obtain that evidence. Id.; see Sun v. Sessions, 883 F.3d 23, 30-31 (2d Cir. 2018) (deferring to the BIA's interpretation in Matter of L-A-C-). If the Court determines that an applicant's testimony is credible but nonetheless insufficient to meet their burden of proof, the Immigration Judge must explain, either in their decision or otherwise in the record, what additional corroborating evidence was needed; why it was reasonable to expect additional corroboration; and why the applicant's explanations for the lack of such corroboration were insufficient. Manning v. Barr, 954 F.3d 477 (2d Cir. 2020).

1

In the Matter of SCOTT, DESTINI TRISNAGAY A#226-091-229          Date of Decision: 4/23/2026

## II.  Asylum

To be statutorily eligible for asylum, an applicant bears the burden of establishing that they are a refugee, which requires a showing of past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. INA §§ 101(a)(42)(A), 208(b)(1)(A); 8 C.F.R. §§ 1208.13, 1240.8(d). If eligibility is established, asylum may be granted in the exercise of discretion. INA § 208(b)(1)(A); INS v. Cardoza-Fonseca, 480 U.S. 421, 423 (1987).

### A.  One Year Filing Deadline

As a threshold matter, an applicant must prove by clear and convincing evidence that their asylum application was filed within one year of the date of their last arrival into the United States. INA § 208(a)(2)(B); 8 C.F.R. § 1208.4(a)(2). If the applicant files after the one-year deadline, they must show to the satisfaction of the Court that they qualify for an exception to the filing deadline. Id.

### B.  Past Persecution

To establish past persecution, an asylum applicant must demonstrate that they suffered persecution in their country of nationality on account of a protected ground, and that they are unable or unwilling to return to, or avail themself of the protection of, that country because of such persecution. INA §§ 101(a)(42)(A), 208(b)(1)(B); 8 C.F.R. § 1208.13(b)(1). "Persecution is the infliction of suffering or harm upon those who differ on the basis of a protected statutory ground," and includes "non-life-threatening violence and physical abuse." Ivanishvili v. U.S. Dep't of Justice, 433 F.3d 332, 341 (2d Cir. 2006) (internal quotation marks and citations omitted). Moreover, persecution must be inflicted by either the government or by a person or entity the government is "unwilling or unable to control." Matter of Acosta, 19 I&N Dec. 211, 222 (BIA 1985). When evaluating whether persecution has occurred, events must be considered cumulatively. Poradisova v. Gonzales, 420 F.3d 70, 79-80 (2d Cir. 2005).

#### 1.  Internal Relocation

For an applicant to be able to internally relocate safely, there must be an area of the country where the circumstances are "substantially better" than those giving rise to a well-founded fear of persecution on the basis of the original claim. Matter of M-Z-M-R-, 26 I&N Dec. 28, 33 (BIA 2012). When determining whether it is reasonable to expect an applicant to relocate in the proposed country of removal, the IJ should consider, but is not limited to considering, the following factors: whether the respondent would face other serious harm in the place of suggested relocation; any ongoing civil strife within the country; administrative, economic, or judicial infrastructure; geographic limitations; and social and cultural constraints, such as age, gender, health, and social and familial ties. 8 C.F.R. § 1208.13(b)(3); see also Dong Zhong Zheng v. Mukasey, 552 F.3d 277, 288 n.7 (2d Cir. 2009). See Singh v. Garland, 11 F.4th 106, 117 (2d Cir. 2021) (concluding the Board's finding that respondent could internally relocate was supported by substantial evidence, where: (1) the record contained evidence that there are 1.2 billion people, including 19 million

2

In the Matter of SCOTT, DESTINI TRISNAGAY A#226-091-229                    Date of Decision: 4/23/2026

Sikhs, living in India and that Indian citizens—Sikhs in particular—do not face difficulties relocating within the country; (2) the record also reflected that there is no central countrywide registration system or nationwide police database that members of the Akali Dal Badal could use to track rivals and that only high-profile militants—not local party organizers such as respondent— are of interest to national authorities; and (3) there were no recent reports of persecution against members of the Akali Dal Mann anywhere in India and respondent did not identify any, let alone enough to be arguably nationwide).

Where the persecutor is a government or is government-sponsored, it shall be presumed that internal relocation would not be reasonable, unless the Department establishes by a preponderance of the evidence that, under all the circumstances, it would be reasonable for the applicant to relocate. 8 C.F.R. § 1208.13(b)(3)(ii). An applicant's allegation that he was persecuted by members of a political party—even one that is in power nationally or is aligned with a party in power nationally—does not establish that the applicant was persecuted by the government. Singh v. Garland, 11 F.4th 106, 115 (2d Cir. 2021).

The mere fact that an applicant may have made voluntary return trips to his home country, standing alone, does not suggest either any fundamental change in circumstances or the possibility of internal relocation, but rather should be considered as one factor among others in determining whether a presumption of future persecution has been rebutted. See Kone v. Holder, 596 F.3d 141, 148 (2d Cir. 2010).

## C. Well-Founded Fear of Future Persecution

If past persecution is established, a regulatory presumption arises that the applicant has a well-founded fear of future persecution on the basis of their original claim. 8 C.F.R. § 1208.13(b)(1). The U.S. Department of Homeland Security may rebut this presumption if it establishes by a preponderance of the evidence that the applicant's fear is no longer well-founded due to a fundamental change in circumstances or because the applicant could avoid future persecution by relocating to another part of the country and that it would be reasonable to expect them to do so. 8 C.F.R. § 1208.13(b)(1)(i)-(ii).

To establish a well-founded fear of future persecution, the applicant must establish both that they have a subjective fear of persecution and that the fear is objectively reasonable. Ramsameachire v. Ashcroft, 357 F.3d 169, 178 (2d Cir. 2004). The applicant's credible testimony may satisfy the subjective component. Id. at 178; see also Diallo v. INS, 232 F.3d 279, 286 (2d Cir. 2000). To meet the objective element of the test, the applicant need only show that such fear is grounded in reality; that is, they must present "reliable, specific, objective" evidence that their fear is reasonable. Ramsameachire, 357 F.3d at 178. The applicant's fear may be well-founded even if there is "only a slight, though discernible, chance of persecution." Diallo, 232 F.3d at 284 (citing Cardoza-Fonseca, 480 U.S. at 431). To demonstrate that their fear of persecution is objectively well-founded, an applicant must provide evidence:

(1) that [they] ha[ve] a belief or characteristic that a persecutor seeks to overcome by means of some mistreatment, that the persecutor has the (2) capability and (3) inclination to impose such mistreatment, and (4) that the persecutor is, or could

3

become, aware of the applicant's possession of the disfavored belief or characteristic.

Kyaw Zwar Tun v. INS, 445 F.3d 554, 565 (2d Cir. 2006).

An applicant is not required to provide evidence that they would be "singled out individually" for persecution in the country of removal if they establish that, in the country from which they are seeking asylum, "there is a pattern or practice . . . of persecution of a group of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion," and that the applicant is included in and identifies with that group, such that their "fear of persecution upon return is reasonable." 8 C.F.R. § 1208.13(b)(2)(iii); see also Shao v. Mukasey, 546 F.3d 138, 150 n.6 (2d Cir. 2008) ("Pattern-and-practice analysis affords a petitioner who cannot credibly demonstrate a reasonable possibility that he will be targeted as an individual for future persecution an alternative means to demonstrate that his fear of persecution is objectively reasonable."). To establish eligibility for asylum based upon a pattern or practice of persecution, an applicant must demonstrate that the persecution against the group in which they are included is "systemic or pervasive." Matter of A-M-, 23 I&N Dec. 737, 741 (BIA 2005).

### D. Nexus to a Protected Ground

An applicant for asylum must also demonstrate that the persecution they fear was or would be "on account of" their race, religion, nationality, membership in a particular social group, or political opinion. INA §§ 101(a)(42)(A), 208(b)(1)(A); 8 C.F.R. §§ 1208.13, 1240.8(d). In post-REAL ID Act cases, the applicant must demonstrate that a protected ground was or will be "at least one central reason for persecuting the applicant." INA § 208(b)(1)(B)(i); see, e.g., Acharya v. Holder, 761 F.3d 289, 297 (2d Cir. 2014); Matter of N-M-, 25 I&N Dec. 526, 526, 531 (BIA 2011) ("In cases arising under the REAL ID Act . . . an alien must demonstrate that the persecutor would not have harmed the applicant if the protected trait did not exist."); Matter of J-B-N- & S-M-, 24 I&N Dec. 208, 212 (BIA 2007); Matter of A-B-, 28 I&N Dec. 307 (AG 2021) ("A-B- III")[1] ; Matter of A-C-A-A-, 28 I&N Dec. 351 (AG 2021).[2] In discerning persecutory motives, the Court must consider the "totality of the circumstances." Matter of S-P-, 21 I&N Dec. 486, 494 (BIA 1996); see Vumi v. Gonzales, 502 F.3d 150, 157-58 (2d Cir. 2007).

#### i. Race/Nationality

As a threshold matter in determining eligibility for asylum, the applicant bears the burden of establishing their nationality. See Wangchuck v. Dep't of Homeland Security, 448 F.3d 524, 528

---

[1] The Attorney General, on June 16, 2021, issued a decision vacating its earlier decisions, Matter of A-B-, 27 I&N Dec. 316 (AG 2018) ("A-B- I") and Matter of A-B-, 28 I&N Dec. 199 (AG 2021) ("A-B- II"). In vacating the prior decisions, the Attorney General abrogated his predecessor's holding that the nexus requirement requires that the protected ground be a but-for cause of the wrongdoer's act and must play more than a minor role in the act. Pending forthcoming rulemaking, the Attorney General directed Immigration Judges and the Board to follow pre A-B- I precedent.

[2] On July 26, 2021, the Attorney General issued a decision vacating its earlier decision, Matter of A-C-A-A-, 28 I&N Dec. 84 (AG 2020). In vacating the prior decision, the Attorney General directed Immigration judges to conduct proceedings consistent with this decision and the opinions in Matter of L-E-A-, 28 I&N Dec. 304 (AG 2021) ("L-E-A- III") and Matter of A-B-, 28 I&N Dec. 307 (AG 2021) ("A-B- III").

4

(2d Cir. 2006); 8 C.F.R. § 1208.13(a). An applicant bears the burden of establishing his or her race or nationality when claiming persecution on account of this protected ground. INA §§ 101(a)(42)(A), 208(b)(1)(A); 8 C.F.R. § § 1208.13, 1240.8(d) 8 C.F.R. § 1208.16(b). "A national is a person owing permanent allegiance to a state," and "[n]ationality is a status conferred by a state, and will generally be recognized by other states provided it is supported by a genuine link between the individual and the conferring state." Dhoumo v. BIA, 416 F.3d 172, 175 (2d Cir. 2005) (citing INA § 101(a)(21) and Restatement (Third) of Foreign Relations § 211) (internal quotations omitted). Race, on the other hand, includes "all kinds of ethnic groups that are referred to as 'races' in common usage." United Nations High Commissioner on Refugees, Handbook on Procedures and Criteria for Determining Refugee Status ¶ 68 (1992); see also Duarte de Guinac v. INS, 179 F.3d 1156, 1160 n.5 (9th Cir. 1999) (noting that race and nationality "may sometimes overlap").

### ii. Religion

"The critical showing that an applicant must make to demonstrate eligibility for asylum on religious persecution grounds is that he [or she] has suffered past persecution, or fears future persecution, on the basis of religion." Rizal v. Gonzales, 442 F.3d 84, 90 (2d Cir. 2006). The applicant must establish that they identify with a particular religion or that others perceive the applicant as an adherent to that religion, but the applicant need not demonstrate detailed knowledge of the religion's doctrinal tenets. Id. Evidence of treatment of religious groups is probative of a threat against an applicant claiming religious persecution. See, e.g., Ivanishvili, 433 F.3d at 339-43 (IJ failed to evaluate Jehovah's Witness testimony about religious persecution in Georgia). Evidence of an applicant's religious conversion where the applicant converted after leaving his or her home country is also probative. See Rafiq v. Gonzales, 468 F.3d 165, 166 (2d Cir. 2006) (reversing denial of CAT claim of Muslim who converted to Christianity).

### iii. Particular Social Group

A "particular social group" must be (1) composed of members who share a common immutable characteristic; (2) defined with particularity; and (3) socially distinct within the society in question. Matter of M-E-V-G-, 26 I&N Dec. 227, 237 (BIA 2014). The characteristic may be innate or based upon a shared past experience. Matter of Acosta, 19 I&N Dec. at 233; see Matter of C-A-, 23 I&N Dec. 951, 958 (BIA 2006).

The "common, immutable characteristic" is determined on a case-by-case basis and "must be one that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences." Matter of Acosta, 19 I&N Dec. at 233. Next, the particularity requirement is "definitional in nature" and focuses on delineation—whether the particular social group definition is sufficiently discrete and precise as opposed to amorphous. Matter of M-E-V-G-, 26 I&N Dec. at 239-41; Matter of W-G-R-, 26 I&N Dec. 208, 214 (BIA 2014). The proposed particular social group should address the "outer limits" of the group's boundaries and "provide a clear benchmark for determining who falls within the group." Matter of M-E-V-G-, 26 I&N Dec. at 239-41. In making this determination, the definition should be analyzed in the context of the society in question and focus on whether members of the society "generally agree on who is included in the group." Matter of W-G-R-, 26 I&N Dec. at

5

221. Lastly, "social distinction" requires that members of the proposed group would be perceived as a separate or distinct group by society. Matter of M-E-V-G-, 26 I&N Dec. at 242 (clarifying that the perception of the society, and not the persecutor, is determinative for social distinction purposes); Quintanilla-Mejia v. Garland, 3 F.4th 569, 588 (2d Cir. 2021). In other words, the society in question must meaningfully distinguish those with the common immutable characteristic from those who do not have it. Id. at 238.

### iv. Political Opinion

To establish persecution on account of a political opinion, the applicant must demonstrate that the persecution is "on account of the victim's political opinion, not the persecutor's." See INS v. Elias-Zacarias, 502 U.S. 478, 482 (1992); see also Castro v. Holder, 597 F.3d 93, 100 (2d Cir. 2010). The persecutor's motive must arise from the applicant's political belief or from a political belief imputed to him by the persecutor. Elias-Zacarias, 502 U.S. at 483; Zelaya-Moreno v. Wilkinson, 989 F.3d 190, 196 (2d Cir. 2021). To prevail on an asylum claim based on political opinion, the asylum applicant must specify the political opinion on which they rely. Zelaya-Moreno, 989 F.3d at 197-201 (finding the applicant's anti-gang views did not constitute a political opinion where his sole "political" statement was "gangs are bad" and there was no evidence in the record that the gangs advocated for a political agenda or employed tactics in service of a political philosophy). Evaluating what constitutes a political opinion for asylum purposes involves a highly "contextual factual inquiry" based on the political context in which the dispute occurs. See Hernandez-Chacon v. Barr, 948 F.3d 94 (2d Cir. 2020) (finding that the IJ and BIA erred in not considering whether an applicant's refusal to acquiesce to a gang member's sexual advances was or could be seen as an expression of a political opinion "given the political context of gang violence and the treatment of women in El Salvador"). An imputed political opinion can constitute a ground of persecution, whether correctly or incorrectly attributed. See id.; Vumi v. Gonzales, 502 F.3d 150, 156 (2d Cir. 2007).

### E. Government Unwilling or Unable

Persecution must be inflicted by either the government or by a person or entity the government is "unwilling or unable to control." See Matter of Acosta, 19 I&N Dec. at 222; see also Pavlova v. INS, 441 F.3d 82, 91 (2d Cir. 2006) ("[W]e have never held that direct governmental action is required to make out a claim of persecution. On the contrary, 'it is well established that private acts may be persecution if the government has proved unwilling to control such actions.'") (internal citations omitted). The unwilling-or-unable standard contains two distinct prongs: the "unwilling" prong and the "unable" prong, only one of which must be satisfied. See Scarlett v. Barr, 957 F.3d 316, 330 (2d Cir. 2020) (finding that even though applicant may not have demonstrated that the Jamaican police were *unwilling* to protect him from gang violence, the BIA overlooked evidence that the Jamaican authorities were *unable* to protect him).

### F. Firm Resettlement

An applicant is ineligible for asylum if he or she was "firmly resettled in another country prior to arriving in the United States." INA § 208(b)(2)(A)(vi). The regulations provide that an applicant "is considered to be firmly resettled if, prior to arrival in the United States, he or she entered into another

6

In the Matter of SCOTT, DESTINI TRISNAGAY A#226-091-229

Date of Decision: 4/23/2026

country with, or while in that country received, an offer of permanent resident status, citizenship, or some other type of permanent resettlement." 8 C.F.R. § 1208.15.

The Second Circuit has adopted a "totality of the circumstances" approach to determining whether an applicant was firmly resettled. See Tchitchui v. Holder, 657 F.3d 132, 136 (2d Cir. 2011); Jin Yi Liao v. Holder, 558 F.3d 152, 157 (2d Cir. 2009) (citing Sall v. Gonzales, 437 F.3d 229, 234-35 (2d Cir. 2006) (per curiam)). Under this approach, an official government offer is not necessary for a person to be firmly resettled in another country. Sall, 437 F.3d at 233; Liao, 558 F.3d at 157. Although an actual offer of permanent residence is of "particular importance," it is one of many factors, including "whether [the applicant] has family ties [in the country where he or she may have been firmly resettled], whether he [or she] has business or property connections that connote permanence, and whether he [or she] enjoyed the legal rights—such as the right to work and to enter and leave the country at will—that permanently settled persons can expect to have." Sall, 437 F.3d at 235. The totality of the applicant's activities in the third country prior to his or her arrival in the United States are relevant to the question of whether he or she was firmly resettled, regardless of whether such activities occurred pre- or post-persecution. See 8 C.F.R. § 1208.15; Tchitchui, 657 F.3d at 136-37.

The BIA has established a four-step analysis for making firm resettlement determinations. Matter of A-G-G-, 25 I&N Dec. 486, 501 (BIA 2011); see also Matter of D-X- & Y-Z-, 25 I&N Dec. 664, 665 (BIA 2012).[3] In the first step, the Department bears the burden of presenting *prima facie* evidence of an offer of firm resettlement. Matter of A-G-G-, 25 I&N Dec. at 501. The Department should first secure and produce "direct evidence of governmental documents indicating an alien's ability to stay in a country indefinitely." Matter of A-G-G-, 25 I&N Dec. at 501. This may include evidence of refugee status, a passport, a travel document, or other evidence indicative of permanent residence. Matter of D-X- & Y-Z-, 25 I&N Dec. at 665. A facially valid permit allowing an asylum applicant to reside in a third country constitutes prima facie evidence of an offer of firm resettlement, even if the permit was obtained fraudulently. See Matter of D-X- & Y-Z-, 25 I&N Dec. 664, 665-66 (BIA 2012).

If direct evidence of an offer of firm resettlement is unavailable, indirect evidence may be used to show that an offer of firm resettlement has been made "if it has a sufficient level of clarity and force to establish that an alien is able to permanently reside in the country." Matter of A-G-G-, 25 I&N Dec. at 502. Moreover, "[t]he existence of a legal mechanism in the country by which an alien can obtain permanent residence *may* be sufficient to make a prima facie showing of an offer of firm resettlement" whether or not the individual applies for that status. Matter of A-G-G-, 25 I&N Dec. at 502. Accordingly, "a viable and available offer to apply for permanent residence in a country of refuge is not negated by the alien's unwillingness or reluctance to satisfy the terms for acceptance." Matter of K-S-E-, 27 I&N Dec. 818, 821 (BIA 2020) (citing Matter of A-G-G-, 25 I&N Dec. at 503 ("The regulations only require that an offer of firm resettlement was available, not that the alien accepted the offer.")).

In the second step of the firm resettlement analysis, the applicant may rebut the Department's evidence of an offer of firm resettlement "by showing by a preponderance of the evidence that such an offer has not, in fact, been made or that he or she would not qualify for it." Matter of A-G-G-, 25 I&N Dec. 486, 503 (BIA 2011); see also 8 C.F.R. § 1240.8(d). In the third step, the Immigration Judge is required to consider the totality of the evidence presented by the parties to determine whether the applicant has rebutted the evidence of firm resettlement. See Matter of A-G-G-, 25 I&N Dec. at 503.

---

[3] The BIA notes that its "framework is consistent with [] the [] totality of the circumstances approach[] because . . . it allows for the consideration of direct and indirect evidence." Matter of A-G-G-, 25 I&N Dec. at 501.

7

In the Matter of SCOTT, DESTINI TRISNAGAY A#226-091-229

Date of Decision: 4/23/2026

Finally, if the Immigration Judge finds that the applicant has not rebutted the evidence of firm resettlement, the burden shifts to the applicant to establish by a preponderance of the evidence that he or she is eligible for one of the regulatory exceptions to the firm resettlement bar. See Matter of A-G-G-, 25 I&N Dec. 486, 503 (BIA 2011); 8 C.F.R. § 1208.15 (a)-(b). An applicant can qualify for an exception to the firm resettlement bar if he establishes that: (1) his entry into that country was a necessary consequence of his flight from persecution, that he remained in that country only as long as was necessary to arrange onward travel, and that he did not establish significant ties to that country; or (2) the conditions of his residence in that country were so substantially and consciously restricted in that county that he was not in fact resettled. 8 C.F.R. § 1208.15 (a)-(b); see Matter of A-G-G-, 25 I&N Dec. at 503; see, e.g., Matter of K-S-E-, 28 I&N Dec. at 822 (determining that the respondent's evidence did not establish that the Brazilian Government "actively supports any mistreatment of Haitians that would constitute a conscious and substantial restriction of the respondent's residence"). Where an asylum applicant who has resettled in a third country travels to the United States and then returns to the country of resettlement, the applicant did not remain in that country "only as long as was necessary to arrange onward travel" for purposes of establishing an exception to firm resettlement. See Matter of D-X- & Y-Z-, 25 I&N Dec. 664, 667-68 (BIA 2012).

## G. Discretion

An applicant who establishes statutory eligibility for asylum still bears the burden of demonstrating that they merit a grant of asylum as a matter of discretion. INA § 208(b)(1)(A); Cardoza-Fonseca, 480 U.S. at 429 n.5 (noting that the Attorney General is not required to grant asylum to everyone who meets the refugee definition). In determining whether a favorable exercise of discretion is warranted, both favorable and adverse factors should be considered. Matter of Pula, 19 I&N Dec. 467, 473-74 (BIA 1987) (superseded by regulation on other grounds). General humanitarian factors, such as age, health, or family ties, should also be considered in the exercise of discretion. Matter of H-, 21 I&N Dec. 337, 347-48 (BIA 1996); Matter of Pula, 19 I&N Dec. at 474. In the absence of any adverse factors, asylum should be granted. Matter of Pula, 19 I&N Dec. at 474. In addition, the danger of persecution should outweigh all but the most egregious adverse factors. Wu Zheng Huang v. INS, 436 F.3d 89, 98 (2d Cir. 2006) (citing Matter of Kasinga, 21 I&N Dec. 357, 367 (BIA 1996)); see Matter of Pula, 19 I&N Dec. at 474.

A decision to deny asylum in the exercise of discretion should not be based solely on the noncitizen's use of a smuggler to enter the United States or on a partial adverse credibility determination. Wu Zheng Huang, 436 F.3d at 99. Rather, "the totality of the circumstances and actions of an alien[4] in his flight from the country where he fears persecution should be examined in determining whether a favorable exercise of discretion is warranted." Matter of Pula, 19 I&N Dec. at 473; see Wu Zheng Huang, 436 F.3d at 99. When an Immigration Judge denies asylum solely in the exercise of discretion and grants withholding of removal, they must reconsider the denial to take into account factors relevant to family unification. See 8 C.F.R. § 1208.16(e); see also Matter of T-Z-, 24 I&N Dec. 163, 176 (BIA 2007). Factors to be considered include the reasons for the denial and reasonable alternatives available to the applicant such as reunification with their spouse or minor children in a third country. 8 C.F.R. § 1208.16(e).

---

[4] The term "alien" is no longer used in EOIR decisions unless quoting a statute, regulation, legal opinion, court order, or settlement agreement.

In the Matter of SCOTT, DESTINI TRISNAGAY A#226-091-229

Date of Decision: 4/23/2026

## III.  Withholding of Removal

To qualify for withholding of removal, an applicant must establish a "clear probability" of persecution, meaning that it is "more likely than not" that they would be subject to persecution on account of a protected ground. Cardoza Fonseca, 480 U.S. at 430 (citing INS v. Stevic, 467 U.S. 407 (1984)); see INA § 241(b)(3).  A withholding applicant must establish that a protected ground "was or will be at least one central reason" for the persecution they will face. Matter of C-T-L-, 25 I&N Dec. 341, 348 (BIA 2010).

Where the applicant establishes that they suffered past persecution on the basis of one such statutory ground, it is presumed that the applicant's life or freedom will be threatened in the future, and the burden shifts to DHS to demonstrate by a preponderance of the evidence that (1) a fundamental change in circumstances has occurred in that country such that the applicant's life or freedom will not be threatened or (2) the applicant could safely relocate to another area in the proposed country of removal and that it would be reasonable to expect them to do so.  8 C.F.R. § 1208.16(b)(1); see also Makadji v. Gonzales, 470 F.3d 450, 458 (2d Cir. 2006); Serafimovich v. Ashcroft, 456 F.3d 81, 85 (2d Cir. 2006).  If the applicant did not suffer past persecution, or if the fear of future threat to life or freedom is unrelated to the past persecution that they suffered, the applicant must establish "that it is more likely than not" that they "would be persecuted" in the future on account of a protected ground.  8 C.F.R. § 208.16(b)(2); Ivanishvili v. U.S. Dep't of Justice, 433 F.3d 332, 339 (2d Cir. 2006).

## IV.  Convention Against Torture

The Convention Against Torture ("CAT") and its implementing regulations provide that no person shall be removed to a country where it is "more likely than not" that such person will be subject to torture. 8 C.F.R. § 1208.16(c)(2).  Where an application for asylum is denied because the applicant failed to demonstrate the "slight, though discernible, chance of persecution" required for asylum, the applicant necessarily fails to meet the "more likely than not to be tortured" standard for CAT relief.  Lecaj v. Holder, 616 F.3d 111, 119 (2d Cir. 2010).  Eligibility for CAT relief cannot be established by stringing together a series of suppositions to show that torture is more likely than not to occur unless the evidence shows that each step in the hypothetical chain of events is more likely than not to happen. Matter of J-F-F-, 23 I&N Dec. 912, 917-18 (A.G. 2006).

"Torture" is "an extreme form of cruel and inhuman treatment," defined, in part, as the intentional infliction of severe pain or suffering by, or at the instigation of, or with the consent or acquiescence of a public official.  8 C.F.R. §§ 1208.18(a)(1)(2); see Pierre v. Gonzales, 502 F.3d 109, 115 (2d Cir. 2007).  The definition of torture does not include pain or suffering arising only from, inherent in, or incidental to lawful sanctions, unless such sanctions defeat the object and purpose of the CAT. 8 C.F.R. § 1208.18(a)(3); see, e.g., Pierre, 502 F.3d at 121; Matter of R-A-F-, 27 I&N Dec. 778 (A.G. 2020); Matter of J-R-G-P-, 27 I&N Dec. 482 (BIA 2018); see also Gallina v. Wilkinson, 988 F.3d 137 (2d Cir. 2021) (finding no basis to overturn the BIA's finding that applicant's pain and suffering in Italian prison were "inherent in or incident to a lawful sanction and thus not intentionally inflicted").  "Torture" does not include "negligent acts" or harm stemming from a lack of resources. Matter of J-R-G-P-, 27 I&N Dec. at 484.  Instead, a torturous act must "be specifically intended to inflict severe physical or mental pain or suffering." Matter of R-A-F-, 27

9

In the Matter of SCOTT, DESTINI TRISNAGAY A#226-091-229

Date of Decision: 4/23/2026

I&N Dec. at 778. The act must be motivated by "such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind." Id.

Torturous conduct committed by a public official who is acting "in an official capacity," that is, "under color of law," is covered by the CAT. Matter of O-F-A-S-, 28 I&N Dec. 35 (A.G. 2020); see also Matter of J-G-R-, 28 I&N Dec. 733 (BIA 2023); 8 C.F.R. § 1208.18(a)(1). The "under color of law" standard makes no categorical distinction between the acts of low and high level officials. Matter of O-F-A-S-, 28 I&N Dec. at 40. A public official, regardless of rank, acts "under color of law" when he exercises power "possessed by virtue of . . . law and made possible only because [he was] clothed with the authority of . . . law." Id. The key consideration in determining if an official's tortuous conduct was undertaken "in an official capacity" is "whether the official was able to engage in the conduct because of his or her government position, or whether the official could have done so without connection to the government." Matter of J-G-R-, 28 I&N Dec. at 738. There is no distinct "rogue official" test for determining whether a public official or other person is acting "in an official capacity." Matter of O-F-A-S-, 28 I&N Dec. at 41. Acquiescence of a public official requires that the official have awareness of or remain "willfully blind" to the activity constituting torture prior to its commission, and thereafter breach their legal responsibility to intervene to prevent such activity. 8 C.F.R. § 1208.18(a)(7); Khouzam v. Ashcroft, 361 F.3d 161, 171 (2d Cir. 2004).

In assessing whether an applicant has satisfied their burden of proof, the Court must consider all evidence relevant to the possibility of future torture, including evidence that the applicant has suffered torture in the past; evidence that the applicant could relocate to a part of the country of removal where they are not likely to be tortured; evidence of gross, flagrant or mass violations of human rights within the country of removal; and other relevant information on country conditions. 8 C.F.R. § 1208.16(c)(3); see Ramsameachire, 357 F.3d at 184. The regulations do not require the applicant to establish relocation is not possible. Manning v. Barr, 954 F.3d 477, 488 (2d Cir. 2020) (holding the IJ erred in placing the burden on the applicant to demonstrate that it was not possible to relocate to a different area of the country to avoid torture). Rather, evidence that an applicant can relocate to another part of the country where they are "not likely to be tortured" is only one of a number of factors the IJ must consider. Id. Internal relocation is not satisfied "by assuming that a petitioner must essentially live incommunicado and isolated from loved ones." Id. at 488.

10